# EXHIBIT
# "A"

# Middle District of Alabama
# Claims Register

### 04-11427 Tommy Lee Henry and Letita J. Henry
**Judge William R. Sawyer**
**Debtor Name: HENRY,TOMMY LEE**

| Claim No: 1 | Creditor Name: CHEVRON CREDIT BANK<br>P.O. BOX 5010, SECT 230<br>CONCORD, CA 94524-0010 | Last Date to File Claims:<br>11/17/2004<br>Last Date to File (Govt):<br>Filing Status:<br>Docket Status:<br>Late: N |
|---|---|---|
| Claim Date:<br>07/19/2004 | Amends Claim No:<br>Amended By Claim No: | Duplicates Claim No:<br>Duplicated By Claim No: |
| **Class** | **Amount Claimed** | **Amount Allowed** |
| Unsecured | $81.56 | |
| **Total** | **$81.56** | |
| Description: 7218686314 | | |
| Remarks: | | |

| Claim No: 2<br>**Declaration re:**<br>**Electronic Filing of**<br>**Documents**<br>**henrt22927** | Creditor Name: FARMERS FURNITURE<br>P.O. BOX 1140<br>DUBLIN, GA 31040 | Last Date to File Claims:<br>11/17/2004<br>Last Date to File (Govt):<br>Filing Status: Allow<br>Docket Status:<br>Late: N |
|---|---|---|
| Claim Date:<br>07/22/2004 | Amends Claim No:<br>Amended By Claim No: | Duplicates Claim No:<br>Duplicated By Claim No: |
| **Class** | **Amount Claimed** | **Amount Allowed** |
| Secured | $1193.57 | $1193.57 |
| **Total** | **$1193.57** | **$1193.57** |
| Description: henrt22927-95 | | |
| Remarks: security interest | | |

| Claim No: 3 | Creditor Name: GE CAPITAL CONSUMER CARD CO.<br>DEPT. 0008<br>PALATINE, IL 60055 | Last Date to File Claims:<br>11/17/2004<br>Last Date to File (Govt):<br>Filing Status:<br>Docket Status:<br>Late: N |
|---|---|---|
| Claim Date:<br>07/27/2004 | Amends Claim No:<br>Amended By Claim No: | Duplicates Claim No:<br>Duplicated By Claim No: |
| **Class** | **Amount Claimed** | **Amount Allowed** |
| Unsecured | $370.04 | |
| **Total** | **$370.04** | |

*Description:*

*Remarks:*

| **Claim No: 4** **Real Estate Agreement** | *Creditor Name:* FIVE STAR CREDIT UNION P.O. BOX 2028 DOTHAN, AL 36302 | *Last Date to File Claims:* 11/17/2004 *Last Date to File (Govt):* *Filing Status:* *Docket Status:* *Late:* N |
|---|---|---|
| *Claim Date:* 08/23/2004 | *Amends Claim No:* *Amended By Claim No:* | *Duplicates Claim No:* *Duplicated By Claim No:* |

| **Class** | **Amount Claimed** | **Amount Allowed** |
|---|---|---|
| Secured | $39434.03 | |
| **Total** | **$39434.03** | |

*Description:* Real Estate

*Remarks:*

| **Claim No: 5** **Security Agreement and Title** | *Creditor Name:* FIVE STAR CREDIT UNION P.O. BOX 2028 DOTHAN, AL 36302 | *Last Date to File Claims:* 11/17/2004 *Last Date to File (Govt):* *Filing Status:* *Docket Status:* Reclassify 46 *Late:* N |
|---|---|---|
| *Claim Date:* 08/23/2004 | *Amends Claim No:* *Amended By Claim No:* | *Duplicates Claim No:* *Duplicated By Claim No:* |

| **Class** | **Amount Claimed** | **Amount Allowed** |
|---|---|---|
| Secured | $5803.10 | |
| **Total** | **$5803.10** | |

*Description:* Real Estate and Motor Vehicle

*Remarks:*

| **Claim No: 6** **Real Estate Agreement** | *Creditor Name:* FIVE STAR CREDIT UNION P.O. BOX 2028 DOTHAN, AL 36302 | *Last Date to File Claims:* 11/17/2004 *Last Date to File (Govt):* *Filing Status:* *Docket Status:* *Late:* N |
|---|---|---|
| *Claim Date:* 08/23/2004 | *Amends Claim No:* *Amended By Claim No:* | *Duplicates Claim No:* *Duplicated By Claim No:* |

| **Class** | **Amount Claimed** | **Amount Allowed** |
|---|---|---|
| Secured | $38644.60 | |
| **Total** | **$38644.60** | |

*Description:* Real Estate

*Remarks:*

| Claim No: 7 | Creditor Name: Credit First NA P.O. Box 818011 BK 13 Cleveland, OH 44181-8011 | Last Date to File Claims: 11/17/2004 Last Date to File (Govt): Filing Status: Docket Status: Late: N |
|---|---|---|
| Claim Date: 08/23/2004 | Amends Claim No: Amended By Claim No: | Duplicates Claim No: Duplicated By Claim No: |

| Class | Amount Claimed | Amount Allowed |
|---|---|---|
| Unsecured | $993.66 | |
| Total | $993.66 | |

Description: 506870577

Remarks:

| Claim No: 8 | Creditor Name: Household Bank and its Assigns by eCAST Settlement Corporation as its a P.O. Box 35480 Newark, NJ 07193-5480 | Last Date to File Claims: 11/17/2004 Last Date to File (Govt): Filing Status: Docket Status: Late: N |
|---|---|---|
| Claim Date: 09/01/2004 | Amends Claim No: Amended By Claim No: | Duplicates Claim No: Duplicated By Claim No: |

| Class | Amount Claimed | Amount Allowed |
|---|---|---|
| Unsecured | $556.41 | |
| Total | $556.41 | |

Description:

Remarks:

| Claim No: 9 | Creditor Name: CAPITAL ONE PO BOX 85167 RICHMOND VA. 23285 | Last Date to File Claims: 11/17/2004 Last Date to File (Govt): Filing Status: Docket Status: Late: N |
|---|---|---|
| Claim Date: 10/14/2004 | Amends Claim No: Amended By Claim No: | Duplicates Claim No: Duplicated By Claim No: |

| Class | Amount Claimed | Amount Allowed |
|---|---|---|
| Unsecured | $874.22 | |
| Total | $874.22 | |

Description:

Remarks:

| | | Last Date to File Claims: 11/17/2004 |
|---|---|---|

| Claim No: **10** | Creditor Name: CAPITAL ONE<br>PO BOX 85167<br>RICHMOND VA. 23285 | Last Date to File (Govt):<br>Filing Status:<br>Docket Status:<br>Late: N |
|---|---|---|
| Claim Date:<br>10/14/2004 | Amends Claim No:<br>Amended By Claim No: | Duplicates Claim No:<br>Duplicated By Claim No: |

| Class | Amount Claimed | Amount Allowed |
|---|---|---|
| Unsecured | $676.31 | |
| **Total** | **$676.31** | |

Description:

Remarks:

| Claim No: **11** | Creditor Name: FIVE STAR CREDIT UNION<br>P.O. BOX 2028<br>DOTHAN, AL 36302 | Last Date to File Claims:<br>11/17/2004<br>Last Date to File (Govt):<br>Filing Status:<br>Docket Status:<br>Late: N |
|---|---|---|
| Claim Date:<br>12/17/2004 | Amends Claim No:<br>Amended By Claim No: | Duplicates Claim No:<br>Duplicated By Claim No: |

| Class | Amount Claimed | Amount Allowed |
|---|---|---|
| Secured | $816.30 | |
| **Total** | **$816.30** | |

Description: House and Lot at 788 Truitt Road, Gordon, AL & 1999 Chevrolet Cirrus and 1990 Chevrolet Pickup

Remarks:

## Claims Register Summary

**Case Name:** Tommy Lee Henry and Letita J. Henry
**Case Number:** 2004-11427
**Chapter:** 13
**Date Filed:** 07/02/2004
**Total Number Of Claims:** 11

| | Total Amount Claimed | Total Amount Allowed |
|---|---|---|
| **Unsecured** | $3552.20 | |
| **Secured** | $85891.60 | $1193.57 |
| **Priority** | | |
| **Unknown** | | |
| **Administrative** | | |
| **Total** | **$89443.80** | **$1193.57** |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 01/24/2006 10:27:57 | | | |
| **PACER Login:** | we0550 | **Client Code:** | 5 star |
| **Description:** | Claims Register | **Search Criteria:** | 04-11427 Filed or Entered From: 1/1/1985 Filed or Entered To: 1/24/2006 |
| **Billable Pages:** | 1 | **Cost:** | 0.08 |

# EXHIBIT
# "B"

| UNITED STATES BANKRUPTCY COURT<br>**Middle District of Alabama** | **PROOF OF CLAIM**<br>**Chapter 13** |
|---|---|
| In re<br>TOMMY LEE HENRY, JR. and<br>LETITA J. HENRY | Case Number<br>04-11427 |

NOTE: This form should not be used to make a claim for an administrative arising after the commencement of the case. A "request" of payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503

| | |
|---|---|
| NAME OF CREDITOR **TO SEND DISBURSEMENTS**<br>Five Star Credit Union<br>P.O. Box 2028<br>Dothan, AL 36302-2028 | ☐ Check box if you are aware that (The person or entity whom the debtor owes money or property) anyone else has filed a proof of claim relating to your claim Attach copy of statement giving particulars. Name and Address Where Notice Should be Sent. |
| Name and Address Where Notices Should be Sent<br><br>William C. Elliott<br>P.O. Box 242236<br>Montgomery, AL 36124-2236<br>Telephone No. 334-270-1345 | ☐ Check box if you have never received any notices from the bankruptcy court in this case.<br><br>☐ Check box if the address differs from the address on the envelope sent to you by the court. |
| Account or other number by<br>which creditor identifies debtor: __315351-15__ | Check here if this claim    ☐ replaces<br>                                    ☐ amends >a previously filed claim, dated: |

**1.   BASIS FOR CLAIM**

|  |  |  |  |
|---|---|---|---|
| ☐ | Goods sold | ☐ | Retiree benefits as defined in 11 U.S.C. §1114 (a) |
| ☐ | Services performed | ☐ | Wages, salaries and compensation (Fill out below) |
| xx | Money loaned | | Your social security number _____ |
| ☐ | Personal injury/wrongful death | | Unpaid compensations for services performed |
| ☐ | Taxes | | from _____ to _____ |
| ☐ | Other (Describe briefly) | | (date)          (date) |

| **2. DATE DEBT WAS INCURRED**   12/26/2002 | **3.  IF COURT JUDGMENT. DATED OBTAINED:** |
|---|---|

**4.   CLASSIFICATION OF CLAIM.** Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured nonpriority, (2) Unsecured Priority. (3) Secured. It is possible for part of a claim to be in one category and part in another.

CHECK THE APPROPRIATE BOX OR BOXES that best describe your claim and STATE THE AMOUNT OF THE CLAIM.

| | |
|---|---|
| xx  SECURED CLAIM $ __39,434.03__<br>Attach evidence of perfection of security interest<br>Brief Description of Collateral:<br><br>xx Real Estate   ☐ Motor Vehicle   ☐ Other (Describe briefly)<br><br>See Exhibit "A"<br><br>Amount of arrearage and other charges included in secured claim above if any $ _____<br><br>☐ UNSECURED NONPRIORITY CLAIM $ _____<br>A claim is unsecured if there is no collateral of lien on property of the property is less than the amount of the claim. | ☐ UNSECURED PROPERTY CLAIM $ _____<br>     Specify the priority of the claim.<br>☐ Wages, salaries or commissions (up to $2,000) earned not more than 90 days before filing of the bankruptcy petition or cessation of the debtor's business (which ever is earlier)-11 U.S.C. §507 (a) (3)<br>☐ Contributions to an employee benefit plan 11 U.S.C. §507 (a) (4)<br>☐ Up to $900 of deposits toward purchase, lease, or rental property or services for persona, family, or household use – 11 U.S.C. § 507 (a) (6)<br>☐ Taxes or penalties of governmental units - 11 U.S.C. § (a) (7)<br>☐ Other - 11 U.S.C. §§ 507  (a)  2, (a) (5) – (Described briefly)<br>     §§ 507  (a)  2, (a) (5) – (Described briefly) |

**5.    TOTAL AMOUNT OF CLAIM AT TIME CASE FILED:**

| $ _____ | $ __39,434.03__ | $ _____ | $ __39,434.03__ |
|---|---|---|---|
| (Unsecured) | (Secured) | (Priority) | **(TOTAL)** |

☐ Check box if claim includes prepetition charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges.

**6.       CREDITS AND SETOFFS:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. In filing this claim, claimant has deducted all accounts that claimant owes to debtor.

**7.       SUPPORTING DOCUMENTS:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, or evidence of security interests. If the documents are not available, explain. If the documents are voluminous attach a summary.

**8.       TIME STAMPED COPY:** To receive an acknowledgment of your claim, enclose a stamped, self-addressed envelope and a copy of this proof of claim.

DATE: Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)

July 27 2004                                    WILLIAM C. ELLIOTT, Attorney at Law

Penalty for presenting fraudulent claim. Fine of up to $500,000 or imprisonment for up to 5 years or both, 18 U.S.C. § 152 and 3571.
**Note:  SEND ALL DISBURSEMENTS TO CREDITOR.**

P.O. Box 2028
Dothan, AL 36302-2028

## CLOSED END FIXED RATE NOTE, DISCLOSURE, and SECURITY AGREEMENT

Borrower: **Tommy Lee Henry , Jr.  and wife, Letita J. Henry**
Address:  **788 Truitt Rd.   Gordon, Al. 36343**
Loan Amount:  **$38,922.91**     NOTE RATE: **8.00%**   Account/Loan Number: **4221395784**

**APPROVED**

**DEC 2 6 2002**

**By:** _____

### RUTH IN LENDING DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 8.056% | $17,849.38 | $38,822.91 | $56,672.29 |

Your Payment Schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 119 | $472.64 | Monthly Payment to Begin :  February 1, 2003 |
| 1 | $428.13 | Last Payment Being: January  1, 2013 |

**THIS IS A FIXED RATE NOTE.**

Property Insurance:  You may obtain property insurance from anyone you want that is acceptable to the Credit Union.

Security:  Collateral securing other loans (except loans secured by your primary residence or household goods) with us may also secure this loan.  You are giving a security interest in your Credit Union account(s), shares, certificates and the goods or property being purchased, or other  (describe) _____

Required Deposit:  The Annual Percentage Rate does not take into account any required deposit.

Filing Fees: $ _____     Assumption:  This loan cannot be assumed

Prepayment:  If you pay this loan off early, you will not have to pay a penalty.

Late Charge:  5% of the scheduled payment amount in default if late 10 days or more, with a minimum of 50 cent and maximum of $100.00

See your contact document for any additional information about nonpayment, default, any required repayment in full before the schedule date, and prepayment refunds and penalties.  "e" means an estimate.

Itemization of the Amount Financed of **$38,922.91**

| $ | Amount given to you directly | Amount paid to others on your behalf |
|---|---|---|
| $38,723.91 | Amount paid on your accounts | |
| $199.00 | Prepaid Finance Charge | $ |
| | | $ |
| | | $ |

Description of Security Offered:

Mobile Home:  Year **1991**   Make **Peach St**   Model Number **2614**   Serial Number **PSHGA1019A&B**
Vehicle Desc.:  Year **1999**   Make **Chry**   Model Number **Cirrus LX**   Serial Number **1C3EJ56H9XN531356, 1998**
**Ford Expedition 1FMRU1769WLC48441 & 1990 Chev C1500 1GCDK14K8LZ154002**
Other: also: See Exhibit "A" of Mtg. (land)

Share or Share Certificate Pledged Amount: $_____   in Account Number_____

1. **DEFINITIONS:** Wherever used in this Closed End Note, Disclosure, Security Agreement, the words "you", "your" and "yours" mean each person who signs this Note; the words "Credit Union" mean Five Star Credit Union or anyone to whom is Note is assigned or transferred.
2. **BORROWER'S PROMISE TO PAY.** For value received, you promised to pay to the order the Credit Union, its successors and assigns, the Loan Amount plus interest as set forth on the reverse side of this form.  You agree that the Credit Union may assign or transfer this Note to some other person or entity without your consent and without notice to you.

**ACKNOWLEDGEMENTS.** You acknowledge receipt of a copy of this Closed End Note, Disclosure, and Security Agreement and agree to all of the terms stated on the front and back of this form.  You agree that all of the terms apply to you jointly and severally.  If you are not a borrower, but an owner of collateral being offered as security, sign below and check the box "Owner of Collateral".  By doing so, you agree only to the terms of the security agreement.  If you are a guarantor, sign below and check the box "Guarantor".  By doing so, you agree only to the terms of the Guaranty Agreement.

**CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

_____   12-26-02   _____
Borrower: Tommy Lee Henry, Jr.   Date   Co Borrower: Letita J. Henry

3. **PAYMENTS.** You promise to pay to the Credit Union Or "it Union to its successors and assigns, the Loan Amount shown on the reverse side, plus interest according to the payment schedule shown in the Truth in Lending Disclosure  each payment that you make will be applied first to interest  a to any charges other than principle or interest, and the remainder to the reduction of the principal amount you owe. You will make your monthly payments at the main office. ... the Credit Union, as designated on the reverse side or such other place as the Credit Union may designate. You promise to repay the money loaned to you, including any amounts advanced to you as a part of this loan for the payment of credit insurance premiums for the coverage(s) you elected above in accordance with the payment schedule shown. You agree that the Credit Union may assign or transfer this Note to some other person or entity without your consent and without notice to you.

4. **LATE CHARGES.** If a payment is ever late 10 days or more, you will be charged 5.00% of the payment amount in default, with a minimum of $.50 and a maximum of $100.00.

5. **INTEREST.** A FIXED RATE NOTE.

6. **BORROWER'S RIGHT TO REPAY.** You may repay the principle amount you owe in whole or in part at any time without the imposition of any prepayment penalty. If you make a partial prepayment, it will not change the due date or amount of any monthly payment, unless the Credit Union agrees in writing to change.

7. **SECURITY AGREEMENT.** The payment of this Note shall be secured by all of your present and future Credit Union accounts, shares and certificates (excluding IRAs, SEPS, KEP, GHS, or any other accounts which, if pledged, would result in the loss of special tax treatment under the Internal Revenue Code) now you have or hereafter may have including all accounts you have a right to withdraw from or an ownership interest in and by the security shown in the Description of Security Offered section on the reverse side (the Collateral). In the event, real estate is also being given as security for this loan, a security interest in the real estate will be described in a mortgage of deed to secure debt given by the borrowers of even date herewith. Reference to such mortgage or deed to secure debt is hereby made for a more particular description of the terms and conditions of default and acceleration thereof upon which this Note is issued and secured. You are giving this interest to secure repayment of your loan as well as any other amounts you now owe or will owe the Credit Union, except that security interests in your principle place of dwelling or any household goods will only secure the Loan or advance for which those security interest were given. You authorize the Credit Union to take the funds, shares or certificates and apply it to your debt if you are in default. The Credit Union may, solely at its option, allow you to withdraw a portion of your shares without affecting its security interest. Withdrawals may not be allowed if it will reduce the amount of shares in the Credit Union below the amount of your debt. There is a waiver of exemption as to property subject to a security interest executed in connection with this obligation, which property is described above. You warrant unto the Credit Union that you possess sole and unconditional ownership of the Collateral and that there are no other perfected or unperfected security interest therein. You agree to deliver possession of the said personal property and/or certificated or documents of title to such property unto the Credit Union and to do all things necessary to perfect the Credit Union's security interest in the personal property. Real estate will be perfected by the filing of a Mortgage, or Deed to Secure debt on the property. This agreement is intended to also secure not only the original sum advance but also all subsequent advances made by the Credit Union for the purpose of paying any charges or expenses permitting by the Uniform Commercial Code (UCC) as enacted by the laws of the state in which the Collateral is located, and also taxes, liens, other security interest, and insurance premiums which it deems necessary to pay to protect its security interest in the property; all of said advances to be hereby secured and to be payable with like interest as herein provided for the original sum advanced; you agree to indemnify and save harmless the Credit Union for any loss, liability or damage it may suffer by reason of your furnishing third parties with incorrect statements of account, whether done in good faith or not; you agree to release the Credit Union from any liability for failure to send a Statement of Termination of Financing within the time required by the UCC; you agree that any objections which you are entitled to make under the UCC shall be binding upon the Credit Union only in writing and signed by you and delivered to the Credit Union; you agree to furnish the Credit Union with a complete and accurate list of names and addresses of all persons entitled to receive notice under the UCC within 24 hours and upon failure to do so the Credit Union shall be entitled to assume that there are none or if an incorrect list be furnished, the Credit Union shall recover from you any loss or damage it may suffer in reliance thereon. You agree to immediately remove any personal property which is not a part of the Collateral from the Collateral upon default. You further agree to notify the Credit Union within 24 hours after repossession or foreclosure, if you claim that any property not covered by this security agreement was obtained with the Collateral upon repossession or foreclosure. You further agree that failure to give such notice by registered mail shall constitute a waiver of the right to assert any rights in connection with such property. This Note and Security Agreement is intended to secure also any renewals or extensions of the Note. It is understood and agreed by each party hereto that you signed this Note and Security Agreement without condition, reservations or representation as to any other person having signed the same, or that any other person or persons shall sign the same, as maker, guarantor, or endorser, and without any reservation or conditions as to delivery, execution or otherwise.

8. **OWNERSHIP OF COLLATERAL.** You promise that you will use the proceeds of this loan to purchase the Collateral or that no one else has any claim, right or interest in the Collateral. You agree not to sell, lease, pledge or give the Collateral to anyone else until you have repaid the debt to the Credit Union or the Credit Union gives you written permission.

9. **USE OF THE COLLATERAL.** You promise to protect and keep the Collateral in good repair, to defend the Collateral from any third party claims, to protect it from any forced levy or sale, to refrain from using it for any unlawful purpose, to refrain from altering or modifying the Collateral without the written permission of the Credit Union, to notify the Credit Union prior to moving or changing the location of the Collateral, and to assist the Credit Union to defend its rights in the Collateral.

10. **INSURANCE AND TAXES.** You must keep the Collateral fully insured against loss or damage said coverage listed the Credit Union as loss payee. You may obtain this insurance from anyone you want that is acceptable to the Credit Union. If you fail to obtain or maintain insurance, the Credit Union may purchase insurance coverage on your behalf. Such insurance may cover only the Credit Union's interest. You authorize the Credit Union to add the cost of the insurance to this loan and charge you a FINANCE CHARGE at the same rate as the original sum advanced. You also promise to pay any and all taxes due on the Collateral and to furnish the Credit Union with proof of said payment. If you fail to do so, the Credit Union may pay the taxes and add the amount to this loan and charge you a FINANCE CHARGE at the same rate as your loan. You agree that the Credit Union may increase your payments if it pays any insurance, taxes or other charges or demand payment of such advances in full.

11. **DEFAULT.** You will be in default if you violate any of the promises or conditions set out in this Closed End Note, Disclosure, and Security Agreement, or any other agreement or statement you have made to the Credit Union or if any change occurs which the Credit Union reasonably believes endangers the Collateral or your ability to repay this loan. Default includes, but is not limited to, the following: * You fail to make any payment when it is due; * You break any promise, covenant, or agreement you have made to the Credit Union under this agreement or in connection with agreement or in connection with any other agreement you have with the Credit Union is not true; * You or any guarantor dies, become insolvent, files a petition for relief under any chapter of the Bankruptcy Code or for any reason is unable to pay their debts when due; * You, for whatever reason, discontinue , dissolve or otherwise leave your usual business activity or employment; * A judgment is entered against you or against any guarantor in any court; * A writ of attachment, a lien, a writ of garnishment or any similar legal process is issued against any of your property or that any guarantor; * Any loss, theft or damage to any Collateral given under this agreement should occur; * You fail to keep in force any insurance which is required under the terms of this agreement or any other agreement or any other agreement you have with the Credit Union now or in the future; * Any Collateral used to secure your payment of this agreement or any other agreement you have with the Credit Union now or in the future is moved to another county without the Credit Union's prior written consent; * You are in default under the provisions of any security agreement given to the Credit Union; or * Anything else happens which gives the Credit Union any reason to believe that your ability or willingness to pay the Credit Union is impaired or that any other loan account with the Credit Union is not adequately secured.

12. **ACCELERATION.** In the event of a default in the payment of any monthly payment due under this Note, or in case of a failure to perform any of the terms and covenants contained in the Security Agreement and/or mortgage or deed to secure debt, if you, or if there should be such a charge in the affairs (financial or otherwise) of any party liable under this Note, as in the opinion of the Credit Union would increase the risk or render the debt insecure, the whole of the debt evidence by this Note, or any balance remaining unpaid thereon, together with any and all accrued interest may, at the option of the Credit Union, without notice of such acceleration to any party to this Note, become at once due and payable.

13. **WAIVERS.** You and any other person who has obligations under this Note waive presentment, protest, notice of protest, notice of dishonor, demand and all legal diligence in enforcing the collection of this Note and hereby expressly agree that the Credit Union may defer or postpone collection of the whole or any part of this Note, either principal and/or interest, or may extend or renew the whole or any part thereof. Any change in or modification of any of the terms of this Note must be in writing and signed by us.

14. **COLLECTION COSTS.** In the event of default, you agree to pay all costs of collecting the amount you owe under this agreement including, reasonable attorney's fees not in excess of 15% of the unpaid debt if the amount financed hereunder exceeds $300.00, and the debt is referred for collection to any attorney who is not our employee.

15. **GIVING OF NOTICES.** Subject to applicable law, any notice that must be given to you under this Note will be given by delivering or mailing it to you at the address stated on the reverse side or such notice to the address as you may designated by notice to the Credit Union. Any notice that must be given to the Credit Union under this Note shall be given by mailing such notice to the address of the Credit Union as stated on the reverse side or to such other address as may have been designated by notice to you.

16. **GOVERNING LAW.** This Note shall be governed as to its validity, interpretation, or construction affect and in all other respects by the laws and decisions of the state in which the Collateral is located.

**GUARANTY AGREEMENT:** Each guarantor who has signed this agreement agrees that without notice to or consent from any of you, the Credit Union may extend any amount due or may fail to take any action concerning any security or against any party who may be liable (primarily or secondarily) under the Note or this Guaranty Agreement, all without affecting the liability of any guarantor. You agree that this obligation shall not be affected by any understanding that any person was or is to become bound (primarily or secondarily) under the Note or this Guaranty Agreement or by the death or bankruptcy of any party or by any action or inaction of the Credit Union. You agree in the event of default to pay all cost of collection, including a reasonable attorney's fee not in excess of 15% of the unpaid debt if the amount financed hereunder exceeds $300.00 and the debt is referred for collection to any attorney who is not our employee. As further security, you pledge and convey unto the Credit Union all of your Credit Union accounts, shares and certificates (excluding IRAs, SEPS, KEO, GHS or any other accounts which, if pledged, would result in the loss of special tax treatment under the Internal Revenue Code) you now have or hereafter may have including all accounts you have a right to withdraw from or any ownership interest in, and you authorize the Credit Union to apply any or all such paid shares and payments on shares to the payment of said indebtedness now owing or which may hereinafter accrue. You agree that any notice sent by the Credit Union to any of you shall constitute notice  to any and all of you. You waive any and all notice required by the Uniform Commercial Code or applicable law. Any change in or modification of any of the terms of this Guaranty Agreement must be in writing and signed by us.

TLH   LJH

After recording return to prepared by:

**★ FIVE STAR**
**★ ★ ★ ★ ★**
**CREDIT UNION**
411 North Foster Street
Dothan, Alabama 36303

MTG     1537     93
Recorded In Above Book and Page
01/08/2003 09:47:24 AM
Luke Cooley
Judge of Probate
Houston County, Alabama

## MORTGAGE

STATE OF ALABAMA
COUNTY OF Houston
Mortgage/Address: FIVE STAR CREDIT UNION, 411 N. Foster Street, Dothan, AL 36303
<u>Mortgagor : Tommy Lee Henry,Jr. and wife, Letita J. Henry</u>
Date Mortgage Executed: <u>December 26,2002</u>
Principle Sum: <u>$38,922.91</u>                              Maturity Date: <u>January 01,2013</u>
County where the property is situated: <u>Houston</u>
First Mortgage Recorded in _____, page _____.         First Mortgage Assigned in _____, page _____.

THIS MORTGAGE, made and entered into this day as stated above as "Date Mortgage Executed",
By and between the above stated "Mortgagor" (hereinafter referred to as "Mortgagor," whether one or more) and the above stated "Mortgagee".

WITNESSETH:

WHEREAS, said Mortgagor, is justly indebted to Mortgagee in the above stated " Principal Sum" together with any advances hereinafter provided, in the lawful money of the United States, which indebtedness is evidenced by a Promissory Note of even date herewith which bears interest as provided therein and which is payable in accordance with its terms, with the entire Debt, if not sooner paid, due and payable on the above stated "Maturity Date",

NOW THEREFORE, in consideration of the premises and of said indebt ness and in order to secure prompt payment of the same according to the terms and stipulations contained in said Promissory Note and any and all extensions and renewals thereof, or of any part thereof, and any other amounts that the Mortgagee or its successors or assigns may advance to the Mortgagor before the payment in full of said Mortgage indebtedness, and any additional interest that may become due on any such extensions, renewals and advances or any part thereof (the aggregate amount of such debt, including any extensions, renewals, advances and interest due thereon, is hereinafter collectively called "Debt") and compliance with all the stipulations herein contained, the Mortgagor does hereby grant, bargain, sell and convey unto the Mortgagee, the real estate described as follows:

"SEE EXHIBIT A"

TO HAVE AND TO HOLD the real estate unto the Mortgagee, its successors and assigns forever, together with all the improvements now or hereafter erected on the real estate and all easements, rights, privileges, tenements, appurtenances, rents, royalties, mineral, oil and gas rights, water, water rights and water stock and all fixtures now or hereafter attached to the same real estate, all of which, including replacements and additions thereto shall be deemed to be and remain a part of the real estate covered by this Mortgage; and all of the foregoing are hereinafter referred to as "Real Estate" and shall be conveyed by this Mortgage.

The Mortgagor covenants with the Mortgagee that the Mortgagor is lawfully seized in fee simple of the Real Estate and has a good right to sell and convey the Real Estate as aforesaid; that the Real Estate is free of all encumbrances, except as stated herein, and the Mortgagor will warrant and forever defend the title to the Real Estate unto the Mortgagee against the lawful claims of all persons, except as otherwise herein provided.

The Mortgage is junior and subordinate to that certain Mortgage if stated above as "First Mortgage", and if so, recorded as stated above and if assigned as recorded as stated above in the County Probate Office where the land is situated (hereinafter called the "First Mortgage"). It is specifically agreed that in the event default should be made in the payment of principal, interest or any other sums payable under the terms and provisions of the First Mortgage, the Mortgage shall have the right without notice to anyone, but shall not be obligated, to pay part or all of whatever amounts may be due under the terms of the First Mortgage, and any and all payments so made shall be added to the debt secured by this Mortgage and the Debt (including all such payments) shall be immediately due and payable, at the option of the Mortgagee, and this Mortgage shall be subject to foreclosure in all respects as provided by law and by the provisions hereof.

The Mortgagor hereby authorizes the holder of any prior mortgage encumbering the Real Estate to disclose to the Mortgagee the following information: (1) the amount of indebtedness secured by such mortgages; (2) the amount of such indebtedness that is unpaid; (3) whether any amount owned on such indebtedness is or has been in arrears; (4) whether there is or has been any default with respect to such mortgage or the indebtedness secured hereby; and (5) any other information regarding such mortgage or the indebtedness secured thereby which the Mortgagee may request from time to time.

For the purpose of securing the payment of the Debt, the Mortgagor agrees to: (1) pay promptly when due all taxes, assessments, charges, fines and other liens which may attain priority over this Mortgage (hereinafter jointly called "Liens"), when imposed legally upon the Real Estate and if default is made in the payment of the Liens, or any part thereof, the Mortgagee, at its option, may pay the same; (2) keep the Real Estate continuously insured, in such manner and by such companies as may be satisfactory to the Mortgagee; against loss by fire, vandalism, malicious mischief and other perils usually covered by a fire insurance policy with standard extended coverage endorsements, with loss, if any, payable to the Mortgagee, as its interest may appear; such insurance to be in an amount sufficient to cover the Debt. The original insurance policy, and all replacements therefore, shall be delivered to and held by the Mortgagee until the Debt is paid in full. The original insurance policy, and all replacements therefore shall provide that they may not be cancelled without the insurer giving at least ten days prior written notice of such cancellation to the Mortgagee. The Mortgagor hereby assigns and pledges to the Mortgagee, as further security for the payment of the Debt, each and every policy of hazard insurance now and hereafter in effect which insures said improvements, or any part thereof, together with all the right, title and interest of the Mortgagor in and to each and every such policy, including but not limited to all the Mortgagor's right, title and interest of the Mortgagor in and to each such policy, including but not limited to all the Mortgagor's right, title and interest in and to any premiums paid on such hazard insurance, including all rights to return premiums. If the Mortgagor fails to keep the Real Estate insured as specified above then, at the election of the Mortgagee and without notice to any person, the Mortgagee may declare the entire Debt due and payable and this Mortgage subject to foreclosure, and this Mortgage may be foreclosed as hereinafter provided; and, regardless of whether the Mortgagee declares the entire Debt due and payable, the Mortgagor may, but shall not be obligated to, insure the Real Estate for its full insurable value (or for such lesser amount as the Mortgagee may wish) against such risks of loss, for its own benefit the proceeds from such insurance (less cost of collecting same), if collected, to be credited against the Debt, or, at the election of the Mortgagee, such proceeds may be used in repairing or reconstruction the improvements location on the Real Estate. All amounts spent by the Mortgagee for insurance or for the payment of Liens shall become a debt due by the Mortgagor to the Mortgagee and at once payable without demand upon or notice to the Mortgagor, and shall be secured by the lien of this Mortgage, and shall bear interest from the date of payment by the Mortgagee until paid at the rate of interest provided for in the Promissory Note. The Mortgagor agrees to pay promptly when due the principle and interest of the Debt and keep and perform every other covenant and agreement of the Promissory Note secured hereby.

As further security for the payment of the Debt, the Mortgagor hereby assigns and pledges to the Mortgagee, the following described property rights, claims, rents, profits, issues and revenues: (1) All rents, profits, issues, and revenues of the Real Estate from time to time accruing, whether under leases or tenancies now existing or hereafter created, reserving to the Mortgagor, so long as the Mortgagor is not in default, hereunder, the right to receive and retain such rents, profits, issues and revenues. (2) All judgments, awards of damages and settlements hereafter made resulting from condemnation proceedings or the taking of the Real Estate, or any part thereof, under the power of eminent domain, or for any damage (whether caused by such taking or otherwise) to the Real Estate, or any part thereof, or to any rights appurtenant thereto, including any award for change of grade of streets, and all payments made for the voluntary sale of the Real Estate, or any part thereof, in lieu of the exercise of the power of eminent domain shall be paid to the Mortgagee. The Mortgagee is hereby authorized on behalf of and in the name of the Mortgagor to execute and deliver valid a quittances for, or appeal from any such judgments or awards. The

TLH     LJH

The Mortgagor hereby incorporates by reference into this Mortgage all of the provisions of the Promissory Note of even date herewith. Mortgagor agrees that, in the event that any provision or clause of this Mortgage or the Promissory Note conflicts with applicable law, such conflict shall not affect any other provision or clause of this Mortgage or the Promissory Note conflicts with applicable law, such conflict shall not affect any other provisions of this Mortgage or the Promissory Note which can be given effect. It is agreed that the provisions of the Mortgage and the Promissory Note are sever able and that, if one or more of the provisions contained in this Mortgage or in a Promissory Note other provision hereof, this Mortgage shall be construed as is such invalid, illegal, or unenforceable provision has never been contained herein. If enactment or expiration of applicable laws has the effect of rending any provision of the Promissory Note or this Mortgage unenforceable according to its terms, and may invoke any remedies permitted hereunder.

The mortgagor agrees to keep the Real Estate and all improvements located thereon in good repair and further agrees not to commit waste or permit impairment or deterioration of the Real Estate, and at all times to maintain such improvements in as good condition as they are, reasonable wear and tear excepted.

If all or any part of the Real Estate or any interest therein is sold or transferred by Mortgagor without Mortgagee's prior written consent, excluding (a) the creation of a lien or encumbrance subordinate to this Mortgage, (b) the creation of a purchase money security interest for household appliances, (c) the transfer by devise descent or by operation of law upon the death of a joint tenant or (d) the grant of any leasehold interest of three years or less not containing an option to purchase. Mortgagee may, at Mortgagee's option, declare all of the sums secured by this Mortgage to be immediately due and payable. Mortgagee shall have waived such option to accelerate if, prior to the sale or transfer, Mortgagee and the person to whom the Real Estate is to be sold or transferred reach agreement in writing that the credit of such person is satisfactory to Mortgagee and that the interest payable on the sums secured by this Mortgage shall be at such rate as Mortgagee shall request.

The Mortgagor agrees that no delay or failure of the Mortgage to exercise any option to declare the Debt due and payable shall be deemed a waiver of the Mortgagee's right to exercise such option, either as to any past or present default, and it is agreed that no terms or conditions contained in this Mortgage shall be waived, altered or changed except by a written instrument signed by the Mortgagor and signed on behalf of the Mortgagee by one of its duly authorized representatives.

After default on the part of the Mortgagor, the Mortgagee, upon bill filed or other proper legal proceedings being commenced for the foreclosure of this Mortgage, shall be entitled to the appointment by any competent court, without notice to any party, of a receiver for the rents issues and profits of the Real Estate, with power to lease and control the Real Estate, and with such other powers as may be deemed necessary.

Upon request of Mortgagor (separately or severally, if more than one), Mortgagee, at Mortgagee's option prior to release of this Mortgage, may make future advances to Mortgagor (separately or severally, if more than one). Such future advances, with interest thereon, shall be secured by this Mortgage when evidenced by promissory notes stating that said notes are received hereby.

UPON CONDITION, HOWEVER, that if the Mortgagor pays the Debt (which debt includes the indebtedness evidenced by the Promissory Note hereinabove referred to and any or all extensions and renewals thereof and advances and any interest due on such extensions, renewals and advances) and all other indebtedness secured hereby and reimburses the Mortgagee for any amounts the Mortgagee has paid in payment of Liens But if: (1) any warranty or representation made in this Mortgage is breached or proves false in any material respect; (2) default is made in the due performance of any covenant or agreement of the Mortgagor under this Mortgage; (3) default is made in payment to the Mortgagee of any sum paid by the Mortgagee under the authority of any provision of this Mortgage; (4) the Debt, or any part thereof, remains unpaid at maturity; (5) the interest of the Mortgagee in the Real Estate become endangered by reason of the enforcement of any prior lien or encumbrance; (6) any statement of lien is filed against the Real Estate, on which such statement is based; (7) any law is passed imposing or authorizing the imposition of any specific tax upon this mortgage or the Debt or permitting or authorizing the deduction of any such tax from the principle or interest of the Debt, or by virtue of which any tax lien or assessment upon the Real Estate shall be chargeable against the owner of this Mortgage; (8) any of the stipulations contained in this Mortgage is declared invalid or inoperative by any court of competent jurisdiction; (9) Mortgagor or any of them (a) shall apply for or consent to the appointment of a receiver, trustee or liquidator thereof of the Real Estate or of all or a substantial part of such Mortgagor's assets, (b) be adjudicated a bankrupt or insolvent or file a voluntary petition in bankruptcy, (c) fail, or admit in writing such Mortgagor's inability, generally to pay such Mortgagor's debts as they come due, (d) make a general assignment for the benefit of creditors, (e) file a petition or an answer seeking reorganization or an arrangement with creditors or taking advantage of any insolvency law, (f) file an answer admitting the material allegations of, or consent to, or default in answering a petition filed against such Mortgagor in any bankruptcy reorganizing; or insolvency proceedings; or (g) an order for relief or other judgment or decree shall be entered by any court of competent jurisdiction approving a petition seeking liquidation or reorganization of the Mortgagor, or any of them, if more than one, or appointing a receiver, trustee or liquidator of any Mortgagor, or of the Real Estate or of all or a substantial part of the assets of any Mortgagor; then, upon the happening of any one or more of said events, at the option of the Mortgagee, the unpaid balance of the Debt shall at once become due and payable and this Mortgage shall be subject to foreclosure and may be foreclosed as now provided by law in case of past-due mortgages; and the Mortgagee shall be authorized to take possession of the Real Estate and, after giving notice of the time, place and terms of sale by publication once a week for three consecutive weeks in some newspaper published in the county in which the Real Estate is located to sell the Real Estate in front of the courthouse door of said county at public outcry, to the highest bidder for cash and to apply the proceeds of said sales as follows: firs, to the expense of advertising, selling and conveying the Real Estate and foreclosing this mortgage, including a reasonable attorney's fee; second, to the payment of any amounts that have been spent, or that it may then be necessary to spend, in paying insurance premiums, liens or other encumbrances, with interest thereon; third, to the payment in full of the balance of the Debt and interest thereon, whether the same shall or shall not have fully matured at the date of said sale, but no interest shall be collected beyond the day of sale and any unearned interest shall be credited to the Mortgagor; and fourth, the balance, if any, to be paid to the party or parties appearing of record as the owner of the Real Estate at the time of sale, after deducting the cost of ascertaining who is such owner. The Mortgagor agrees that the Mortgagee may bid at any sale has under the terms of this Mortgage and may purchase the Real Estate if the highest bidder thereof. At the foreclosure sale the Real Estate may be offered for sale and sold as a whole without first offering it in any other manner or may be offered for sale and sold in any other manner the Mortgagee may elect. The Mortgagor agrees to pay all costs, including reasonable attorney's fees, incurred by the Mortgagee in collecting or securing or attempting to collect or secure the Debt or any part thereof, or in defending or attempting to defend the priority of this Mortgage against any lien or encumbrance on the Real Estate, unless this Mortgage is herein expressly made subject to any such lien or encumbrance; and/or all cost incurred in the foreclosure of this Mortgage, either under the power of sale contained herein, or by virtue of the decree of any court of competent jurisdiction. The full amount of such costs incurred by the Mortgagee shall be a part of the Debt and shall be secured by this Mortgage. The purchaser at any such sales shall be under no obligation to see to the proper application of the purchase money. In the event of a sale hereunder, the Mortgagee, or the owner of the Debt and Mortgage, or auctioneer, shall execute to the purchaser for and in the name of the Mortgagor a deed to the Real Estate.

Mortgagor waives all rights of homestead exemption in the Real Estate and relinquishes all rights of curtesy and dower in the Real Estate.

Plural or singular words used herein to designate the undersigned shall be construed to refer to the maker or makers of this Mortgage, whether one or more natural persons. All covenants and agreements herein made by the undersigned shall bind the heirs, personal representatives, successors and assigns of the undersigned, and every option, right and privilege herein reserved or secured to the Mortgagee, shall inure to the benefit of the Mortgagee's successor and assigns.

Mortgagor agrees that all of the provisions printed above are agreed to and accepted by Mortgagor and constitute valid and enforceable provision of this Mortgage. IN WITNESS WHEREOF, the undersigned Mortgagor has executed this instrument on the date first written above.

_____ (SEAL)
Tommy Lee Henry, Jr.

_____ (SEAL)
Letita J. Henry

STATE OF ALABAMA
COUNTY OF Houston

I, the undersigned authority, a Notary Public, in and for said County in said State, hereby certify that Tommy Lee Henry, Jr. and Letica J. Henry (s) is (are) signed to the foregoing conveyance, and who is (are) known to me, acknowledged before me on this day that being informed of the contents of said conveyance they executed the same voluntarily on the date the same bears date. Given under my hand and official seal this 26th day of December, 2002.

My commission expires: _____

NOTARY PUBLIC STATE OF ALABAMA AT LARGE
MY COMMISSION EXPIRES: May 19, 2004
BONDED THRU NOTARY PUBLIC UNDERWRITERS Notary Public

NOTE TO CLERK OF COURT: Mortgagee certifies that if at any point this Mortgage is assigned to a non-tax exempt holder that such Holder will comply with Alabama Code 40-22-2(5)(1975).

MTG    1537    95

# "EXHIBIT A"

**Property of:** TOMMY LEE HENRY, JR. and wife, LETITA J. HENRY
788 Truitt Rd., Gordon, AL 36343

Lots 1, 2 & 3, Block "A", Peaceful Acres Subdivision, a subdivision situated in Houston County, Alabama, as per map or plat of same recorded in the office of the Judge of Probate of Houston County, Alabama in Plat Book 5, Page 48.  Together with all improvements and also,

1-1991 Peach State Double Wide-28x52-Model 2614,
    serial #PSHGA10191A and PSHGA10191B
1-1999 Chry. Cirrus LX 4 dr., Serial #1C3EJ56H9XN531356
1-1998 Ford Expedition, Serial #1FMRU1769WLC48441
1-1990 Chev. C1500 4WD, Serial #1GCDK14K8LZ154002

Tommy Lee Henry, Jr.

Letita J. Henry

No Tax Collected        1.00
Recording Fee          17.00
TOTAL                  18.00

# EXHIBIT "C"

| UNITED STATES BANKRUPTCY COURT<br>**Middle District of Alabama** | **PROOF OF CLAIM**<br>**Chapter 13** |
|---|---|
| In re<br>TOMMY LEE HENRY, JR. and<br>LETITA J. HENRY | Case Number<br>04-11427 |

NOTE: This form should not be used to make a claim for an administrative arising after the commencement of the case. A "request" of
payment of an administrative expense may be filed pursuant to 11 U.S.C. § 503.

| NAME OF CREDITOR **TO SEND DISBURSEMENTS**<br>Five Star Credit Union<br>P.O. Box 2028<br>Dothan, AL 36302-2028 | □ Check box if you are aware that (The person or entity<br>whom the debtor owes money or property) anyone else has<br>filed a proof of claim relating to your claim Attach copy of<br>statement giving particulars. Name and Address Where Notice<br>Should be Sent. |
|---|---|
| Name and Address Where Notices Should be Sent<br><br>William C. Elliott<br>P.O. Box 242236<br>Montgomery, AL 36124-2236<br>Telephone No. 334-270-1345 | □ Check box if you have never received any notices from<br>the bankruptcy court in this case.<br><br>□ Check box if the address differs from the address on the<br>envelope sent to you by the court. |

| Account or other number by<br>which creditor identifies debtor: ___315351-16___ | Check here if this claim □ replaces<br>□ amends >a previously filed claim, dated: |
|---|---|

**1.  BASIS FOR CLAIM**

| | | | |
|---|---|---|---|
| □ | Goods sold | □ | Retiree benefits as defined in 11 U.S.C. §1114 (a) |
| □ | Services performed | □ | Wages, salaries and compensation (Fill out below) |
| xx | Money loaned | | Your social security number _____ |
| □ | Personal injury/wrongful death | | Unpaid compensations for services performed |
| □ | Taxes | | from _____ to _____ |
| □ | Other (Describe briefly) | | (date)                    (date) |

**2. DATE DEBT WAS INCURRED**   12/26/2002        **3.  IF COURT JUDGMENT, DATED OBTAINED:**

**4.  CLASSIFICATION OF CLAIM.** Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured nonpriority, (2) Unsecured Priority, (3) Secured. It is
possible for part of a claim to be in one category and part in another.

CHECK THE APPROPRIATE BOX OR BOXES that best describe your claim and STATE THE AMOUNT OF THE CLAIM.

| | |
|---|---|
| **XX  SECURED CLAIM $  ___5,803.10___**<br>Attach evidence of perfection of security interest<br>Brief Description of Collateral:<br><br>■ Real Estate      ■ Motor Vehicle      □ Other (Describe briefly)<br><br>See Exhibit "A"<br><br>Amount of arrearage and other charges included in secured claim above<br>if any $_____<br><br>□ UNSECURED NONPRIORITY CLAIM $_____<br>A claim is unsecured if there is no collateral of lien on property of the<br>property is less than the amount of the claim. | □  UNSECURED PROPERTY CLAIM $_____<br>    Specify the priority of the claim.<br>□  Wages salaries or commissions (up to $2,000) earned not more than 90 days<br>    before filing of the bankruptcy petition or cessation of the debtor's business<br>    (which ever is earlier)-11 U.S.C. §507 (a) (3)<br>□  Contributions to an employee benefit plan 11 U.S.C. §507 (a) (4)<br>□  Up to $900 of deposits toward purchase, lease, or rental property or services<br>    for persona, family, or household use -  11 U.S.C. § 507 (a) (6)<br>□  Taxes or penalties of governmental units - 11 U.S.C. § (a) (7)<br>□  Other - 11 U.S.C. §§ 507 (a) 2, (a) (5) – (Described briefly)<br>       §§ 507 (a) 2, (a) (5) – (Described briefly) |

**5.    TOTAL AMOUNT OF CLAIM AT TIME CASE FILED:**

| $_____<br>(Unsecured) | $ 5,803.10<br>(Secured) | $_____<br>(Priority) | $  5,803.10<br>(TOTAL) |
|---|---|---|---|

□ Check box if claim includes prepetition charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges.

**6.        CREDITS AND SETOFFS:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim.
In filing this claim, claimant has deducted all accounts that claimant owes to debtor.

**7.        SUPPORTING DOCUMENTS:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of
running accounts, contracts, court judgments, or evidence of security interests. If the documents are not available, explain. If the documents are voluminous
attach a summary.

**8.        TIME STAMPED COPY:** To receive an acknowledgment of your claim, enclose a stamped, self-addressed envelope and a copy of this proof of claim.

DATE: Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)

WILLIAM C. ELLIOTT, Attorney at Law

_[signature]_  9-20-07

Penalty for presenting fraudulent claim. Fine of up to $500,000 or imprisonment for up to 5 years or both, 18 U.S.C. § 152 and 3571.
Note:  **SEND ALL DISBURSEMENTS TO CREDITOR.**

FIVE STAR CREDIT UNION
P.O. Box 2028
Dothan, AL 36302-2028

## CLOSED END FIXED RATE NOTE, DISCLOSURE, and SECURITY AGREEMENT

Borrower: <u>Tommy Lee Henry , Jr.  and wife, Letita J. Henry</u>
Address:  <u>788 Truitt Rd.   Gordon, Al 36343</u>
Loan Amount: <u>$7,249.41</u>          NOTE RATE: <u>8.00%</u>  Account/Loan Number: <u>4221395741</u>

**APPROVED**

**DEC 2 6 2002**

### RUTH IN LENDING DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 8.00% | $1,246.35 | $7,249.41 | $8,495.76 |

Your Payment Schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 47 | $177.12 | Monthly Payment to Begin :  February 1, 2003 |
| 1 | $171.12 | Last Payment Being: January  1, 2007 |

**THIS IS A FIXED RATE NOTE.**

Property Insurance:  You may obtain property insurance from anyone you want that is acceptable to the Credit Union.

Security:  Collateral securing other loans (except loans secured by your primary residence or household goods) with us may also secure this loan.  You are giving a security interest in your Credit Union account(s), shares, certificates and the goods or property being purchased, or other  (describe) _____

Required Deposit:  The Annual Percentage Rate does not take into account any required deposit.

Filing Fees: $                    Assumption:  This loan cannot be assumed

Prepayment:  If you pay this loan off early, you will not have to pay a penalty.

Late Charge:  5% of the scheduled payment amount in default if late 10 days or more, with a minimum of 50 cent and maximum of $100.00

See your contact document for any additional information about nonpayment, default, any required repayment in full before the schedule date, and prepayment refunds and penalties.  "*e*" means an estimate.

Itemization of the Amount Financed of <u>$7,249.41</u>

| | | |
|---|---|---|
| $ | Amount given to you directly | Amount paid to others on your behalf |
| $7,220.41 | Amount paid on your accounts | |
| $29.00 | Prepaid Finance Charge | $ |
| | | $ |
| | | $ |

Description of Security Offered:

| | | | |
|---|---|---|---|
| Mobile Home: Year <u>1991</u>   Make <u>Peach St</u> | Model Number <u>2614</u> | Serial Number <u>PSHGA1019A&B</u> | |
| Vehicle Desc.: Year <u>1999</u>   Make <u>Chry</u> | Model Number  Cirrus LX | Serial Number <u>1C3EJ56H9XN531356, 1998</u> | |

<u>Ford Expedition 1FMRU1769WLC48441 & 1990 Chev C1500 1GCDK14K8LZ154002</u>
Other: also: See Exhibit "A" of Mtg. (land)

Share or Share Certificate Pledged Amount: $_____          in Account Number_____

1. <u>DEFINITIONS</u>:  Wherever used in this Closed End Note, Disclosure, Security Agreement, the words "you",  "your" and "yours" mean each person who signs this Note; the words "Credit Union" mean Five Star Credit Union or anyone to whom is Note is assigned or transferred.

2. <u>BORROWER'S PROMISE TO PAY</u>.  For value received, you promised to pay to the order the Credit Union, its successors and assigns, the Loan Amount plus interest as set forth on the reverse side of this form.  You agree that the Credit Union may assign or transfer this Note to some other person or entity without your consent and without notice to you.

   **ACKNOWLEDGEMENTS.**  You acknowledge receipt of a copy of this Closed End Note, Disclosure, and Security Agreement and agree to all of the terms stated on the front and back of this form.  You agree that all of the terms apply to you jointly and severally.  If you are not a borrower, but an owner of collateral being offered as security, sign below and check the box "Owner of Collateral".  By doing so, you agree only to the terms of the security agreement.  If you are a guarantor, sign below and check the box "Guarantor".  By doing so, you agree only to the terms of the Guaranty Agreement.

**CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

_____          12-26-02          _____
Borrower: Tommy Lee Henry, Jr.          Date          Co Borrower:Letita J. Henry

3. **PAYMENTS.** You promise to repay by the Order of the Credit Union all sums advanced under this Note, plus interest, according to the payment schedule shown in the Truth in Lending Disclosure. Each payment that you make will be applied first to interest, then to any charges other than principle or interest, and the remainder to the reduction of the principal amount you owe. You will make your monthly payments at the main office of the Credit Union, as designated on the reverse side or such other place as the Credit Union may designate. You promise to repay the money loaned to you, including any amounts advanced to you as a part of this loan for the payment of credit insurance premiums for the coverage(s) you elected above in accordance with the payment schedule shown. You agree that the Credit Union may assign or transfer this Note to some other person or entity without your consent and without notice to you.

4. **LATE CHARGES.** If a payment is ever late 10 days or more, you will be charged 5.00% of the payment amount in default, with a minimum of $.50 and a maximum of $100.00.

5. **INTEREST.** A FIXED RATE NOTE.

6. **BORROWER'S RIGHT TO REPAY.** You may repay the principle amount you owe in whole or in part at any time without the imposition of any prepayment penalty. If you make a partial prepayment, it will not change the due date or amount of any monthly payment, unless the Credit Union agrees in writing to change.

7. **SECURITY AGREEMENT.** The payment of this Note shall be secured by all of your present and future Credit Union accounts, shares and certificates (excluding IRAs, SEPS, KEP, GHS, or any other accounts which, if pledged, would result in the loss of special tax treatment under the Internal Revenue Code) you now have or hereafter may have including all accounts you have a right to withdraw from or an ownership interest in and by the security shown in the Description of Security Offered section on the reverse side (the Collateral). In the event, real estate is also being given as security for this loan, a security interest in the real estate will be described in a mortgage of deed to secure debt given by the borrowers of even date herewith. Reference to such mortgage or deed to secure debt is hereby made for a more particular description of the terms and conditions of default and acceleration upon which this Note is issued and secured. You are giving this interest to secure repayment of your loan as well as any other amounts you now owe or will owe the Credit Union, except that security interests in your principle place of dwelling or any household goods will only secure the Loan or advance for which those security interest were given. You authorize the Credit Union to take the funds, shares or certificates and apply it to your debt if you are in default. The Credit Union may, solely at its option, allow you to withdraw a portion of your shares without affecting its security interest. Withdrawals may not be allowed if it will reduce the amount of shares in the Credit Union below the amount of your debt. There is a waiver of exemption as to property subject to a security interest executed in connection with this obligation, which property is described above. You warrant unto the Credit Union that you possess sole and unconditional ownership of the Collateral and that there are no other perfected or unperfected security interest therein. You agree to deliver possession of the said personal property and/or certificated or documents of title to such property unto the Credit Union and to do all things necessary to perfect the Credit Union's security interest in the personal property. Real estate will be perfected by the filing of a Mortgage, or Deed to Secure debt on the property. This agreement is intended to also secure not only the original sum advance but also all subsequent advances made by the Credit Union for the purpose of paying any charges or expenses permitting by the Uniform Commercial Code (UCC) as enacted by the laws of the state in which the Collateral is located, and also taxes, liens, other security interest, and insurance premiums which it deems necessary to pay to protect its security interest in the property; all of said advances to be hereby secured and to be payable with like interest as herein provided for the original sum advanced; you agree to indemnify and save harmless the Credit Union for any loss, liability or damage it may suffer by reason of your furnishing third parties with incorrect statements of account, whether done in good faith or not; you agree to release the Credit Union from any liability for failure to send a Statement of Termination of Financing within the time required by the UCC; you agree that any objections which you are entitled to make under the UCC shall be binding upon the Credit Union only in writing and signed by you and delivered to the Credit Union; a written statement of any claim under the UCC signed by you shall be delivered to the Credit Union within 24 hours of the alleged violation and failure to do so shall be a bar to any claim there under; you agree to furnish the Credit Union with a complete and accurate list of names and addresses of all persons entitled to receive notice under the UCC within 24 hours and upon failure to do so the Credit Union shall be entitled to assume that there are none or if an incorrect list be furnished, the Credit Union shall recover from you any loss or damage it may suffer in reliance thereon. You agree to immediately remove any personal property which is not a part of the Collateral from the Collateral upon default. You further agree to notify the Credit Union within 24 hours after repossession or foreclosure, if you claim that any property not covered by this security agreement was obtained with the Collateral upon repossession or foreclosure. You further agree that failure to give such notice by registered mail shall constitute a waiver of the right to assert any rights in connection with such property. This Note and Security Agreement is intended to secure also any renewals or extensions of the Note. It is understood and agreed by each party hereto that you signed this Note and Security Agreement without condition, reservations or representation as to any other person having signed the same, or that any other person or persons shall sign the same, as maker, guarantor, or endorser, and without any reservation of conditions as to delivery, execution or otherwise.

8. **OWNERSHIP OF COLLATERAL.** You promise that you will use the proceeds of this loan to purchase the Collateral or that no one else has any claim, right or interest in the Collateral. You agree not to sell, lease, pledge or give the Collateral to anyone else until you have repaid the debt to the Credit Union or the Credit Union gives you written permission.

9. **USE OF THE COLLATERAL.** You promise to protect and keep the Collateral in good repair, to defend the Collateral from any third party claims, to protect it from any forced levy or sale, to refrain from using it for any unlawful purpose, to refrain from altering or modifying the Collateral without the written permission of the Credit Union, to notify the Credit Union prior to moving or changing the location of the Collateral, and to assist the Credit Union to defend its rights in the Collateral.

10. **INSURANCE AND TAXES.** You must keep the Collateral fully insured against loss or damage said coverage listed the Credit Union as loss payee. You may obtain this insurance from anyone you want that is acceptable to the Credit Union. If you fail to obtain or maintain insurance, the Credit Union may purchase insurance coverage on your behalf. Such insurance may cover only the Credit Union's interest. You authorize the Credit Union to add the cost of the insurance to this loan and charge you a FINANCE CHARGE at the same rate as the original sum advanced. You also promise to pay any and all taxes due on the Collateral and to furnish the Credit Union with proof of said payment. If you fail to do so, the Credit Union may pay the taxes and add the amount to this loan and charge you a FINANCE CHARGE at the same rate as your loan. You agree that the Credit Union may increase your payments if it pays any insurance, taxes or other charges or demand payment of such advances in full.

11. **DEFAULT.** You will be in default if you violate any of the promises or conditions set out in this Closed End Note, Disclosure, and Security Agreement, or any other agreement or statement you have made to the Credit Union or if any change occurs which the Credit Union reasonably believes endangers the Collateral or your ability to repay this loan. Default includes, but in not limited to, the following: * You fail to make any payment when it is due; * You break any promise, covenant, or agreement you have made to the Credit Union under this agreement or in connection with agreement or in connection with any other agreement you have with the Credit Union is not true; * You or any guarantor dies, become insolvent, files a petition for relief under any chapter of the Bankruptcy Code or for any reason is unable to pay their debts as they are due; * You, for whatever reason, discontinue, dissolve or otherwise leave your usual business activity or employment; * A judgment is entered against you or against any guarantor in any court; * A writ of attachment, a lien, a writ of garnishment or any similar legal process is issued against any of your property or that any guarantor; * Any loss, theft or damage to any Collateral given under this agreement should occur; * You fail to keep in force any insurance which is required under the terms of this agreement or any other agreement or any other agreement you have with the Credit Union now or in the future; * Any Collateral used to secure your payment of this agreement or any other agreement you have with the Credit Union now or in the future is moved to another county without the Credit Union prior written consent; * You are in default under the provisions of any security agreement given to the Credit Union; or * Anything else happens which gives the Credit Union any reason to believe that your ability or willingness to pay the Credit Union is impaired or that any other loan account with the Credit Union is not adequately secured.

12. **ACCELERATION.** In the event of a default in the payment of any monthly payment due under this Note, or in case of a failure to perform any of the terms and covenants contained in the Security Agreement and/or mortgage or deed to secure debt, if any, or if there should be such a charge in the affairs (financial or otherwise) of any party liable under this Note, as in the opinion of the Credit Union would increase the risk or render the debt insecure, the whole of the debt evidence by this Note, or any balance remaining unpaid thereon, together with any and all accrued interest may, at the option of the Credit Union, without notice of such acceleration to any party to this Note, become at once due and payable.

13. **WAIVERS.** You and any other person who has obligations under this Note waive presentment, protest, notice of protest, notice of dishonor, demand and all legal diligence in enforcing the collection of this Note and hereby expressly agree that the Credit Union may defer or postpone collection of the whole or any part of this Note, either principal and/or interest, or may extend or renew the whole or any part thereof. Any change in or modification of any of the terms of this Note must be in writing and signed by us.

14. **COLLECTION COSTS.** In the event of default, you agree to pay all costs of collecting the amount you owe under this agreement including, reasonable attorney's fees not in excess of 15% of the unpaid debt if the amount financed hereunder exceeds $300.00, and the debt is referred for collection to any attorney who is not our employee.

15. **GIVING OF NOTICES.** Subject to applicable law, any notice that must be given to you under this Note will be given by delivering or mailing it to you at the address stated on the reverse side or such notice to the address as you may designated by notice to the Credit Union. Any notice that must be given to the Credit Union under this Note shall be given by mailing such notice to the address of the Credit Union as stated on the reverse side or to such other address as many have been designated by notice to you.

16. **GOVERNING LAW.** This Note shall be governed as to its validity, interpretation, or construction affect and in all other respects by the laws and decisions of the state in which the Collateral is located.

**GUARANTY AGREEMENT:** Each guarantor who has signed this agreement agrees that without notice to or consent from any of you, the Credit Union may extend any amount due or may fail to take any action concerning any security or against any party who may be liable (primarily or secondarily) under the Note or this Guaranty Agreement, all without affecting the liability of any guarantor. You agree that this obligation shall not be affected by any understanding that any person was or is to become bound (primarily or secondarily) under the Note or this Guaranty Agreement or by the death or bankruptcy of any party or by any action or inaction of the Credit Union. You agree in the event of default to pay all cost of collection, including a reasonable attorney's fee not in excess of 15% of the unpaid debt if the amount financed hereunder exceeds $300.00 and the debt is referred for collection to any attorney who is not our employee. As further security, you pledge and convey unto the Credit Union all of your Credit Union accounts, shares and certificates (excluding IRAs, SEPS, KEO, GHS or any other accounts which, if pledged, would result in the loss of special tax treatment under the Internal Revenue Code) you now have or hereafter may have including all accounts you have a right to withdraw from or an ownership interest in, and you authorize the Credit Union to apply any or all such paid shares and payments on shares to the payment of said indebtedness now owing or which may hereinafter accrue. You agree that any notice sent by the Credit Union to any of you shall constitute notice to any and all of you. You waive any and all notice required by the Uniform Commercial Code or applicable law. Any change in or modification of any of the terms of this Guaranty Agreement must be in writing and signed by us.

TLH   LJH
TLH   LJH



**FIVE STAR**
★ ★ ★ ★ ★
**CREDIT UNION**

411 North Foster Street
Dothan, Alabama 36303

MTG      1537     96
Recorded In Above Book and Page
01/08/2003 09:49:12 AM
Luke Cooley
Judge of Probate
Houston County, Alabama

## MORTGAGE

STATE OF ALABAMA
COUNTY OF Houston
Mortgage/Address: FIVE STAR CREDIT UNION, 411 N. Foster Street, Dothan, AL 36303
Mortgager : **Tommy Lee Henry,Jr. and wife, Letita J. Henry**
Date Mortgage Executed: **December 26,2002**
Principle Sum: **$7,249.41**                                    Maturity Date: **January 01,2007**
County where the property is situated:  **Houston**
First Mortgage Recorded in _____, page _____.      First Mortgage Assigned in _____, page _____.

THIS MORTGAGE, made and entered into this day as stated above as "Date Mortgage Executed",
By and between the above stated "Mortgagor" (hereinafter referred to as "Mortgagor", whether one or more) and the above stated "Mortgagee".

WITNESSETH:

WHEREAS, said Mortgagor, is justly indebted to Mortgagee in the above stated " Principal Sum" together with any advances hereinafter provided, in the lawful money of the United States, which indebtedness is evidenced by a Promissory Note of even date herewith which bears interest as provided therein and which is payable in accordance with its terms, with the entire Debt, if not sooner paid, due and payable on the above stated "Maturity Date",

NOW THEREFORE, in consideration of the premises and of said indebt ness and in order to secure prompt payment of the same according to the terms and stipulations contained in said Promissory Note and any and all extensions and renewals thereof, or of any part thereof, and any other amounts that the Mortgagee or its successors or assigns may advance to the Mortgagor before the payment in full of said Mortgage indebtedness, and any additional interest that may become due on any such extensions, renewals and advances or any part thereof (the aggregate amount of such debt, including any extensions, renewals, advances and interest due thereon, is hereinafter collectively called "Debt") and compliance with all the stipulations herein contained, the Mortgagor does hereby grant, bargain, sell and convey unto the Mortgagee, the real estate described as follows:

### "SEE EXHIBIT A"

TO HAVE AND TO HOLD the real estate unto the Mortgagee, its successors and assigns forever, together with all the improvements now or hereafter erected on the real estate and all easements, rights, privileges, tenements, appurtenances, rents, royalties, mineral, oil and gas rights, water, water rights and water stock and all fixtures now or hereafter attached to the same real estate, all of which, including replacements and additions thereto shall be deemed to be and remain a part of the real estate covered by this Mortgage; and all of the foregoing are hereinafter referred to as "Real Estate" and shall be conveyed by this Mortgage.

The Mortgagor covenants with the Mortgagee that the Mortgagor is lawfully seized in fee simple of the Real Estate and has a good right to sell and convey the Real Estate as aforesaid; that the Real Estate is free of all encumbrances, except as stated herein, and the Mortgagor will warrant and forever defend the title to the Real Estate unto the Mortgagee against the lawful claims of all persons, except as otherwise herein provided.

The Mortgage is junior and subordinate to that certain Mortgage if stated above as "First Mortgage", and if so, recorded as stated above and if assigned as recorded as stated above in the County Probate Office where the land is situated (hereinafter called the "First Mortgage").  It is specifically agreed that in the event default should be made in the payment of principal, interest or any other sums payable under the terms and provisions of the First Mortgage, the Mortgage shall have the right without notice to anyone, but shall not be obligated, to pay part or all of whatever amounts may be due under the terms of the First Mortgage, and any and all payments so made shall be added to the debt secured by this Mortgage and the Debt (including all such payments) shall be immediately due and payable, at the option of the Mortgagee, and this Mortgage shall be subject to foreclosure in all respects as provided by law and by the provisions hereof.

The Mortgagor hereby authorizes the holder of any prior mortgage encumbering the Real Estate to disclose to the Mortgagee the following information: (1) the amount of indebtedness secured by such mortgage; (2) the amount of such indebtedness that is unpaid; (3) whether any amount owned on such indebtedness is or has been in arrears; (4) whether there is or has been any default with respect to such mortgage or the indebtedness secured hereby; and (5) any other information regarding such mortgage or the indebtedness secured thereby which the Mortgagee may request from time to time.

For the purpose of securing the payment of the Debt, the Mortgagor agrees to: (1) pay promptly when due all taxes, assessments, charges, fines and other liens which may attain priority over this Mortgage (hereinafter jointly called "Liens"), when imposed legally upon the Real Estate and if default is made in the payment of the Liens, or any part thereof, the Mortgagee, at its option, may pay the same; (2) keep the Real Estate continuously insured, in such manner and by such companies as may be satisfactory to the Mortgagee; against loss by fire, vandalism, malicious mischief and other perils usually covered by a fire insurance policy with standard extended coverage endorsements, with loss, if any, payable to the Mortgagee, as its interest may appear; such insurance to be in an amount sufficient to cover the Debt.  The original insurance policy, and all replacements therefore, shall be delivered to and held by the Mortgagee until the Debt is paid in full.  The original insurance policy, and all replacements therefore, shall be delivered to and held by the Mortgagee until the Debt is paid in full.  The original insurance policy and all replacements therefore must provide that they may not be cancelled without the insurer giving at least ten days prior written notice of such cancellation to the Mortgagee.  The Mortgagor hereby assigns and pledges to the Mortgagee, as further security for the payment of the Debt, each and every policy of hazard insurance now and hereafter in effect which insures said improvements, or any part thereof, together with all the right, title and interest of the Mortgagor in and to each and every such policy, including but not limited to all the Mortgagor's right, title and interest of the Mortgagor in and to each such policy, including but not limited to all the Mortgagor's right, title and interest in and to any premiums paid on such hazard insurance, including all rights to return premiums.  If the Mortgagor fails to keep the Real Estate insured as specified above then, at the election of the Mortgagee and without notice to any person, the Mortgagee may declare the entire Debt due and payable and this Mortgage subject to foreclosure, and this Mortgage may be foreclosed as hereinafter provided; and, regardless of whether the Mortgagee declares the entire Debt due and payable, the Mortgagor may, but shall not be obligated to, insure the Real Estate for its full insurable value (or for such lesser amount as the Mortgagee may wish) against such risks of loss, for its own benefit the proceeds from such insurance (less cost of collecting same), if collected, to be credited against the Debt, or, at the election of the Mortgagee, such proceeds may be used in repairing or reconstruction the improvements location on the Real Estate.  All amounts spent by the Mortgagee for insurance or for the payment of Liens shall become a debt due by the Mortgagor to the Mortgagee and at once payable without demand upon or notice to the Mortgagor, and shall be secured by the lien of this Mortgage, and shall bear interest from the date of payment by the Mortgagee until paid at the rate of interest provided for in the Promissory Note.  The Mortgagor agrees to pay promptly when due the principle and interest of the Debt and keep and perform every other covenant and agreement of the Promissory Note secured hereby.

As further security for the payment of the Debt, the Mortgagor hereby assigns and pledges to the Mortgagee, the following described property rights, claims, rents, issues and revenues: (1) All rents, profits, issues, and revenues of the Real Estate from time to time accruing, whether under leases or tenancies now existing or hereafter created, reserving to the Mortgagor, so long as the Mortgagor is not in default, hereunder, the right to receive and retain such rents, profits, issues and revenues. (2) All judgments, awards of damages and settlements hereafter made resulting from condemnation proceedings or the

taking of the Real Estate, or any part thereof, under the power of eminent domain, or for any damage (whether caused by such taking or otherwise) to the Real Estate, or any part thereof, or any rights appurtenant thereto, including any award for change of grade of streets, and all payments made for the voluntary sale of the Real Estate, or any part thereof, in lieu of the exercise of the power of eminent domain shall be paid to the Mortgagee.  The Mortgagee is hereby
authorized on behalf of and in the name of the Mortgagor to execute and deliver valid a quittances for, or appeal from any such judgments or awards.  The

TLH          LJH

Mortgagee may, either with or without taking or any personal property connection with any proceeding or transaction described in this subparagraph 2, in ng court cost and attorney's fees, on the Debt ir h manner as the Mortgagee elects, or, at the Mortgagee's option, the entire amount or any part thereof so received may be released or may be used to rebuild, repair or restore any or all of the improvements located on the Real Estate.

The Mortgagor hereby incorporates by reference into this Mortgage all of the provisions of the Promissory Note of even date herewith. Mortgagor agrees that, in the event that any provision or clause of this Mortgage or the Promissory Note conflicts with applicable law, such conflict shall not affect any other provision or clause of this Mortgage or the Promissory Note conflicts with applicable law, such conflict shall not affect any other provisions of this Mortgage or the Promissory Note which can be given effect. It is agreed that the provisions of the Mortgage and the Promissory Note are sever able and that, if one or more of the provisions contained in this Mortgage or in a Promissory Note other provision hereof; this Mortgage shall be construed as is such invalid, illegal, or unenforceable provision has never been contained herein. If enactment or expiration of applicable laws has the effect of rending any provision of the Promissory Note or this Mortgage unenforceable according to its terms, and may invoke any remedies permitted hereunder.

The mortgagor agrees to keep the Real Estate and all improvements located thereon in good repair and further agrees not to commit waste or permit impairment or deterioration of the Real Estate, and at all times to maintain such improvements in as good condition as they are, reasonable wear and tear excepted.

If all or any part of the Real Estate or any interest therein is sold or transferred by Mortgagor without Mortgagee's prior written consent, excluding (a) the creation of a lien or encumbrance subordinate to this Mortgage, (b) the creation of a purchase money security interest for household appliances, (c) the transfer by devise descent or by operation of law upon the death of a joint tenant or (d) the grant of any leasehold interest of three years or less not containing an option to purchase. Mortgagee may, at Mortgagee's option, declare all of the sums secured by this Mortgage to be immediately due and payable. Mortgagee shall have waived such option to accelerate if, prior to the sale or transfer, Mortgagee and the person to whom the Real Estate is to be sold or transferred reach agreement in writing that the credit of such person is satisfactory to Mortgagee and that the interest payable on the sums secured by this Mortgage shall be at such rate as Mortgagee shall request.

The Mortgagor agrees that no delay or failure of the Mortgage to exercise any option to declare the Debt due and payable shall be deemed a waiver of the Mortgagee's right to exercise such option, either as to any past or present default, and it is agreed that no terms or conditions contained in this Mortgage shall be waived, altered or changed except by a written instrument signed by the Mortgagor and signed on behalf of the Mortgagee by one of its duly authorized representatives.

After default on the part of the Mortgagor, the Mortgagee, upon bill filed or other proper legal proceedings being commenced for the foreclosure of this Mortgage, shall be entitled to the appointment by any competent court, without notice to any party, of a receiver for the rents issues and profits of the Real Estate, with power to lease and control the Real Estate, and with such other powers as may be deemed necessary.

Upon request of Mortgagor (separately or severally, if more than one), Mortgagee, at Mortgagee's option prior to release of this Mortgage, may make future advances to Mortgagor (separately or severally, if more than one). Such future advances, with interest thereon, shall be secured by this Mortgage when evidenced by promissory notes stating that said notes are received hereby.

UPON CONDITION, HOWEVER, that if the Mortgagor pays the Debt (which debt includes the indebtedness evidenced by the Promissory Note hereinabove referred to and any or all extensions and renewals thereof and advances and any interest due on such extensions, renewals and advances) and all other indebtedness secured hereby and reimburses the Mortgagee for any amounts the Mortgagee has paid in payment of Liens But if: (1) any warranty or representation made in this Mortgage is breached or proves false in any material respect; (2) default is made in the due performance of any covenant or agreement of the Mortgagor under this Mortgage; (3) default is made in payment to the Mortgagee of any sum paid by the Mortgagee under the authority of any provision of this Mortgage; (4) the Debt, or any part thereof, remains unpaid at maturity; (5) the interest of the Mortgagee in the Real Estate become endangered by reason of the enforcement of any prior lien or encumbrance; (6) any statement of lien is filed against the Real Estate, on which such statement is based; (7) any law is passed imposing or authorizing the imposition of any specific tax upon this mortgage or the Debt or permitting or authorizing the deduction of any such tax from the principle or interest of the Debt, or by virtue of which any tax lien or assessment upon the Real Estate shall be chargeable against the owner of this Mortgage; (8) any of the stipulations contained in this Mortgage is declared invalid or inoperative by any court of competent jurisdiction; (9) Mortgagor or any of them (a) shall apply for or consent to the appointment of a receiver, trustee or liquidator thereof of the Real Estate or of all or a substantial part of such Mortgagor's assets, (b) be adjudicated a bankrupt or insolvent or file a voluntary petition in bankruptcy, (c) fail, or admit in writing Mortgagor's inability, generally to pay such Mortgagor's debts as they come due, (d) make a general assignment for the benefit of creditors, (e) file a petition or an answer seeking reorganization or an arrangement with creditors or taking advantage of any insolvency law, (f) file an answer admitting the material allegations of, or consent to, or default in answering a petition filed against such Mortgagor in any bankruptcy reorganizing; or insolvency proceedings; or (g) an order for relief or other judgment or decree shall be entered by any court of competent jurisdiction approving a petition seeking liquidation or reorganization of the Mortgagor, or any of them, if more than one, or appointing a receiver, trustee or liquidator of any Mortgagor, or of the Real Estate or of all or a substantial part of the assets of any Mortgagor; then, upon the happening of any one or more of said events, at the option of the Mortgagee, the unpaid balance of the Debt shall at once become due and payable and this Mortgage shall be subject to foreclosure and may be foreclosed as now provided by law in case of past-due mortgages; and the Mortgagee shall be authorized to take possession of the Real Estate and, after giving notice of the time, place and terms of sale by publication once a week for three consecutive weeks in some newspaper published in the county in which the Real Estate is located to sell the Real Estate in front of the courthouse door of said county at public outcry, to the highest bidder for cash and to apply the proceeds of said sales as follows: firs, to the expense of advertising, selling and conveying the Real Estate and foreclosing this mortgage, including a reasonable attorney's fee; second, to the payment of any amounts that have been spent, or that it may then be necessary to spend, in paying insurance premiums, liens or other encumbrances, with interest thereon; third, to the payment in full of the balance of the Debt and interest thereon, whether the same shall or shall not have fully matured at the date of said sale, but no interest shall be collected beyond the day of sale and any unearned interest shall be credited to the Mortgagor; and fourth, the balance, if any, to be paid to the party or parties appearing of record as the owner of the Real Estate at the time of sale, after deducting the cost of ascertaining who is such owner. The Mortgagor agrees that the Mortgagee may bid at any sale has under the terms of this Mortgage and may purchase the Real Estate if the highest bidder thereof. At the foreclosure sale the Real Estate may be offered for sale and sold as a whole without first offering it in any other manner or may be offered for sale and sold in any other manner the Mortgagee may elect. The Mortgagor agrees to pay all costs, including reasonable attorney's fees, incurred by the Mortgagee in collecting or securing or attempting to collect or secure the Debt or any part thereof, or in defending or attempting to defend the priority of this Mortgage against any lien or encumbrance on the Real Estate, unless this Mortgage is herein expressly made subject to any such lien or encumbrance; and/or all cost incurred in the foreclosure of this Mortgage, either under the power of sale contained herein, or by virtue of the decree of any court of competent jurisdiction. The full amount of such costs incurred by the Mortgagee shall be a part of the Debt and shall be secured by this Mortgage. The purchaser at any such sales shall be under no obligation to see to the proper application of the purchase money. In the event of a sale hereunder, the Mortgagee, or the owner of the Debt and Mortgage, or auctioneer, shall execute to the purchaser for and in the name of the Mortgagor a deed to the Real Estate.

Mortgagor waives all rights of homestead exemption in the Real Estate and relinquishes all rights of curtesy and dower in the Real Estate.

Plural or singular words used herein to designate the undersigned shall be construed to refer to the maker or makers of this Mortgage, whether one or more natural persons. All covenants and agreements herein made by the undersigned shall bind the heirs, personal representatives, successors and assigns of the undersigned, and every option, right and privilege herein reserved or secured to the Mortgagee, shall inure to the benefit of the Mortgagee's successor and assigns.

Mortgagor agrees that all of the provisions printed above are agreed to and accepted by Mortgagor and constitute valid and enforceable provision of this Mortgage. IN WITNESS WHEREOF, the undersigned Mortgagor has executed this instrument on the date first written above.

_____ (SEAL)
Tommy Lee Henry, Jr.

_____ (SEAL)
Letita J. Henry

STATE OF ALABAMA
COUNTY Of Houston

I, the undersigned authority, a Notary Public, in and for said County in said State, hereby certify that Tommy Lee Henry, Jr. and Letica J. Henry (s) is (are) known to me. Acknowledged before me on this day that, being informed of the contents of said conveyance they executed the same voluntarily on the day the same bears date. Given under my hand and official seal this 26th day of December, 2002.

My commission expires: _____

MY COMMISSION EXPIRES: May 19, 2004
BONDED THRU NOTARY PUBLIC UNDERWRITERS

_____ Notary Public

NOTE TO CLERK OF COURT: Mortgagee certifies that if at any point this Mortgagee is assigned to a non-tax exempt holder that such Holder will comply with Alabama Code 40-22-2(5)(1975).

MTG    1537    98

## "EXHIBIT A"

Property of: **TOMMY LEE HENRY, JR. and wife, LETITA J. HENRY**
788 Truitt Rd., Gordon, AL 36343

Lots 1, 2 & 3, Block "A", Peaceful Acres Subdivision, a subdivision situated in Houston County, Alabama, as per map or plat of same recorded in the office of the Judge of Probate of Houston County, Alabama in Plat Book 5, Page 48.  Together with all improvements and also,

1-1991 Peach State Double Wide-28x52-Model 2614,
        serial #PSHGA10191A and PSHGA10191B
1-1999 Chry. Cirrus LX 4 dr., Serial #1C3EJ56H9XN531356
1-1998 Ford Expedition, Serial #1FMRU1769WLC48441
1-1990 Chev. C1500 4WD, Serial #1GCDK14K8LZ154002

_____          _____
Tommy Lee Henry, Jr.                  Letita J. Henry

No Tax Collected        1.00
Recording Fee          17.00
TOTAL                  18.00



# STATE OF
# ALABAMA
## DEPARTMENT OF REVENUE

### CERTIFICATE OF TITLE FOR A VEHICLE    3684

| TITLE NO. | VEHICLE IDENTIFICATION NUMBER | TRANS. CODE | DATE ISSUED |
|---|---|---|---|
| 26609458 | PSHGA10191A | 03 | 09/18/2000 |

| YR. MODEL | MAKE | MODEL | BODY TYPE | PREV. AL TITLE NO. |
|---|---|---|---|---|
| 1991 | PEACH S | 2614 | HT | 25879008 |

| CYL | NEW | USED | DEMO | PURCHASE DATE | NO. LIENS | COLOR | ODOMETER |
|---|---|---|---|---|---|---|---|
| 00 | | XX | | 07/21/2000 | 1 | GREY | EXEMPT |

NAME(S) AND MAILING ADDRESS OF OWNER(S)

HENRY TOMMY LEE JR

788 TRUIT RD
GORDON    AL 36343

RESIDENT ADDRESS IF DIFFERENT

MAIL TO—
FIVE STAR CREDIT UNION
P O BOX 2028
DOTHAN    AL 36302-2028

LEGEND(S)

**RELEASE OF LIEN**
The holder of Lien on the vehicle described in this Certificate does hereby state that the lien described in said Certificate of Title is released and discharged.

First Lienholder

1ST LIENHOLDER'S NAME ADDRESS AND LIEN DATE    07/21/2000

FIVE STAR CREDIT UNION
P O BOX 2028
DOTHAN    AL 36302

By _____
Signature of Authorized Agent

Date _____

2ND LIENHOLDER'S NAME ADDRESS AND LIEN DATE

Second Lienholder

By _____
Signature of Authorized Agent

Date _____

This certificate serves as an official document of the Department of Revenue and prima facie evidence that an application for certificate of title has been made for the vehicle described herein, pursuant to the provisions of the Motor Vehicle laws of this state, and the applicant named on the face hereof has been duly recorded as the lawful owner of the vehicle so described. Further, the said vehicle is subject to the security interest by lien(s) show hereon, if any. But, said described vehicle may be subject to a mechanic's lien or a lien given by statute to the United States, this State or any political subdivision of this State or other encumbrances not required to be filed with this Department.

COMMISSIONER OF REVENUE

**CONTROL NUMBER**
24642977

KEEP IN A SAFE PLACE — ANY ALTERATION OR ERASURE VOIDS THIS TITLE



# STATE OF ALABAMA
## DEPARTMENT OF REVENUE

### CERTIFICATE OF TITLE FOR A VEHICLE        3685

TITLE NO.
26609457

VEHICLE IDENTIFICATION NUMBER
PSHGA10191B

TRANS. CODE
03

DATE ISSUED
09/18/2000

YR. MODEL
1991

MAKE
PEACH S

MODEL
2614

BODY TYPE
HT

PREV AL TITLE NO.
25879007

CYL   NEW   USED   DEMO
00         XX

PURCHASE DATE
07/21/2000

NO. LIENS
1

COLOR
GREY

ODOMETER
EXEMPT

NAME(S) AND MAILING ADDRESS OF OWNER(S)
HENRY TOMMY LEE JR

788 TRUIT RD
GORDON       AL 36343

MAIL TO
FIVE STAR CREDIT UNION
P O BOX 2028
DOTHAN       AL 36302-2028

RESIDENT ADDRESS IF DIFFERENT

LEGEND(S)

RELEASE OF LIEN
The holder of Lien on the vehicle described in this Certificate does hereby state that the lien described in said Certificate of Title is released and discharged.

First Lienholder

1ST LIENHOLDER'S NAME ADDRESS AND LIEN DATE      07/21/2000
FIVE STAR CREDIT UNION
P O BOX 2028
DOTHAN       AL 36302

By _____
Signature of Authorized Agent

2ND LIENHOLDER'S NAME ADDRESS AND LIEN DATE

Date _____

Second Lienholder

By _____
Signature of Authorized Agent

Date _____

This certificate serves as an official document of the Department of Revenue and prima facie evidence that an application for certificate of title has been made for the vehicle described herein, pursuant to the provisions of the Motor Vehicle laws of this state, and the applicant named on the face hereof has been duly recorded as the lawful owner of the vehicle so described. Further, the said vehicle is subject to the security interest by lien(s) show hereon, if any. But, said described vehicle may be subject to a mechanic's lien or a lien given by statute to the United States, this State or any political subdivision of this State or other encumbrances not required to be filed with this Department.

CONTROL NUMBER
24642978

COMMISSIONER OF REVENUE

KEEP IN A SAFE PLACE - ANY ALTERATION OR ERASURE VOIDS THIS TITLE

# STATE OF ALABAMA
## DEPARTMENT OF REVENUE

### CERTIFICATE OF TITLE FOR A VEHICLE   4020

| TITLE NO. | VEHICLE IDENTIFICATION NUMBER | TRANS. CODE | DATE ISSUED |
|---|---|---|---|
| 23551555 | 1C3EJ56H9XN531356 | 01 | 11/25/1998 |

| YR. MODEL | MAKE | MODEL | BODY TYPE | PREV AL TITLE NO. |
|---|---|---|---|---|
| 1999 | CHRY   CIRRUS LX | | 4D | |

| CTL. | NEW | USED | DEMO | PURCHASE DATE | NO. LIENS | COLOR | ODOMETER |
|---|---|---|---|---|---|---|---|
| 06 | XX | | | 11/03/1998 | 1 | TAN | 0000020 |

**NAME(S) AND MAILING ADDRESS OF OWNER(S)**

HENRY TOMMY LEE JR

1424 GRIMSLEY RD
GORDON     AL 36343

**MAIL TO**

5 STAR C U
P O BOX 2028
DOTHAN            AL 36302-2028

**RESIDENT ADDRESS IF DIFFERENT**

**LEGEND(S)** ODOMETER READING IS THE ACTUAL MILEAGE

**RELEASE OF LIEN**
The holder of Lien on the vehicle described in this Certificate does hereby state that the lien described in said Certificate of Title is released and discharged.

**1ST LIENHOLDER'S NAME ADDRESS AND LIEN DATE** 11/03/1998

5 STAR C U
P O BOX 2028
DOTHAN          AL 36302

**2ND LIENHOLDER'S NAME ADDRESS AND LIEN DATE**

First Lienholder

By _____
Signature of Authorized Agent

Date _____

Second Lienholder

By _____
Signature of Authorized Agent

Date _____

This certificate serves as an official document of the Department of Revenue and prima facie evidence that an application for certificate of title has been made for the vehicle described herein, pursuant to the provisions of the Motor Vehicle laws of this state, and the applicant named on the face hereof has been duly recorded as the lawful owner of the vehicle so described. Further, the said vehicle is subject to the security interest by lien(s) shown hereon, if any. But, said described vehicle may be subject to a mechanic's lien or a lien given by statute to the United States, this State or any political subdivision of this State or other encumbrances not required to be filed with this Department.

**COMMISSIONER OF REVENUE**

**CONTROL NUMBER**
21968113

KEEP IN A SAFE PLACE — ANY ALTERATION OR ERASURE VOIDS THIS TITLE

AMERICAN BANK NOTE COMPANY



# STATE OF ALABAMA
## DEPARTMENT OF REVENUE

## CERTIFICATE OF TITLE FOR A VEHICLE    3931

| TITLE NO. | VEHICLE IDENTIFICATION NUMBER | | TRANS. CODE | DATE ISSUED |
|---|---|---|---|---|
| 25676906 | 1GCDK14K8LZ154002 | | 01 | 03/15/2000 |

| YR. MODEL | MAKE | MODEL | BODY TYPE | PREV. AL TITLE NO. |
|---|---|---|---|---|
| 1990 | CHEVROL | C1500 4WD | PU | 16601238 |

| CTL | NEW | USED | DEMO | PURCHASE DATE | NO. LIENS | COLOR | ODOMETER |
|---|---|---|---|---|---|---|---|
| 08 | | XX | | 02/03/2000 | 1 | BLU | EXEMPT |

NAME(S) AND MAILING ADDRESS OF OWNER(S)

HENRY TOMMY LEE JR

1424 GRIMSLEY RD
GORDON      AL 36343

RESIDENT ADDRESS IF DIFFERENT

**MAIL TO**

FIVE STAR CREDIT UNION
P O BOX 2028
DOTHAN        AL 36302-2028

LEGEND(S)

**RELEASE OF LIEN**
The holder of Lien on the vehicle described in this Certificate does hereby state that the lien described in said Certificate of Title is released and discharged.

_____
First Lienholder

1ST LIENHOLDER'S NAME ADDRESS AND LIEN DATE    02/03/2000

FIVE STAR CREDIT UNION
P O BOX 2028
DOTHAN        AL 36302

2ND LIENHOLDER'S NAME ADDRESS AND LIEN DATE

By _____
Signature of Authorized Agent

Date _____

_____
Second Lienholder

By _____
Signature of Authorized Agent

Date _____

This certificate serves as an official document of the Department of Revenue and prima facie evidence that an application for certificate of title has been made for the vehicle described herein, pursuant to the provisions of the Motor Vehicle laws of this state, and the applicant named on the face hereof has been duly recorded as the lawful owner of the vehicle so described. Further, the said vehicle is subject to the security interest by lien(s) shown hereon, if any. But, said described vehicle may be subject to a mechanic's lien or a lien given by statute to the United States, this State or any political subdivision of this State or other encumbrances not required to be filed with this Department.

COMMISSIONER OF REVENUE

CONTROL NUMBER

23837450

KEEP IN A SAFE PLACE — ANY ALTERATION OR ERASURE VOIDS THIS TITLE



# EXHIBIT "D"

| UNITED STATES BANKRUPTCY COURT<br>**Middle District of Alabama** | **PROOF OF CLAIM**<br>**Chapter 13** |
|---|---|

| In re<br>TOMMY LEE HENRY, JR. and<br>LETITA J. HENRY | Case Number<br>04-11427 |
|---|---|

NOTE: This form should not be used to make a claim for an administrative arising after the commencement of the case. A "request" of payment of an administrative expense may be filed pursuant to 11 U.S.C § 503

| NAME OF CREDITOR **TO SEND DISBURSEMENTS**<br>Five Star Credit Union<br>P.O. Box 2028<br>Dothan, AL 36302-2028<br><br>Name and Address Where Notices Should be Sent<br><br>William C. Elliott<br>P.O. Box 242236<br>Montgomery, AL 36124-2236<br>Telephone No. 334-270-1345 | ☐ Check box if you are aware that (The person or entity whom the debtor owes money or property) anyone else has filed a proof of claim relating to your claim Attach copy of statement giving particulars. Name and Address Where Notice Should be Sent.<br><br>☐ Check box if you have never received any notices from the bankruptcy court in this case.<br><br>☐ Check box if the address differs from the address on the envelope sent to you by the court. |
|---|---|

| Account or other number by<br>which creditor identifies debtor: ___315351-14___ | Check here if this claim ☐ replaces<br> ☐ amends >a previously filed claim, dated: |
|---|---|

**1. BASIS FOR CLAIM**

- ☐ Goods sold
- ☐ Services performed
- xx Money loaned
- ☐ Personal injury/wrongful death
- ☐ Taxes
- ☐ Other (Describe briefly)

- ☐ Retiree benefits as defined in 11 U.S.C. §1114 (a)
- ☐ Wages, salaries and compensation (Fill out below)
  Your social security number _____
  Unpaid compensations for services performed
  from _____ to _____
     (date)           (date)

| 2. DATE DEBT WAS INCURRED   12/26/2002 | 3. IF COURT JUDGMENT, DATED OBTAINED: |
|---|---|

**4. CLASSIFICATION OF CLAIM.** Under the Bankruptcy Code all claims are classified as one or more of the following: (1) Unsecured nonpriority, (2) Unsecured Priority. (3) Secured. It is possible for part of a claim to be in one category and part in another.

CHECK THE APPROPRIATE BOX OR BOXES that best describe your claim and STATE THE AMOUNT OF THE CLAIM.

**XX SECURED CLAIM $ 38,644.60**
Attach evidence of perfection of security interest
Brief Description of Collateral:
XX Real Estate   ☐ Motor Vehicle   ☐ Other (Describe briefly)

       See Exhibit "A"

Amount of arrearage and other charges included in secured claim above
if any $_____

☐ UNSECURED NONPRIORITY CLAIM $_____
A claim is unsecured if there is no collateral of lien on property of the property is less than the amount of the claim.

- ☐ UNSECURED PROPERTY CLAIM $_____
  Specify the priority of the claim.
- ☐ Wages salaries or commissions (up to $2,000) earned not more that 90 days before filing of the bankruptcy petition or cessation of the debtor's business (which ever is earlier)-11 U.S.C. §507 (a) (3)
- ☐ Contributions to an employee benefit plan 11 U.S.C. §507 (a) (4)
- ☐ Up to $900 of deposits toward purchase, lease, or rental property or services for persona, family, or household use - 11 U.S.C. § 507 (a) (6)
- ☐ Taxes or penalties of governmental units - 11 U.S.C. § (a) (7)
- ☐ Other - 11 U.S.C. §§ 507 (a) 2, (a) (5) – (Described briefly)
  §§ 507 (a) 2, (a) (5) – (Described briefly)

**5. TOTAL AMOUNT OF CLAIM AT TIME CASE FILED:**

| $_____ | $ 38,644.60 | $_____ | $ 38,644.60 |
|---|---|---|---|
| (Unsecured) | (Secured) | (Priority) | (TOTAL) |

☐ Check box if claim includes prepetition charges in addition to the principal amount of the claim. Attach itemized statement of all additional charges.

**6. CREDITS AND SETOFFS:** The amount of all payments on this claim has been credited and deducted for the purpose of making this proof of claim. In filing this claim, claimant has deducted all accounts that claimant owes to debtor.

**7. SUPPORTING DOCUMENTS:** Attach copies of supporting documents, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, court judgments, or evidence of security interests. If the documents are not available, explain. If the documents are voluminous attach a summary.

**8. TIME STAMPED COPY:** To receive an acknowledgment of your claim, enclose a stamped, self-addressed envelope and a copy of this proof of claim.

DATE: Sign and print the name and title, if any, of the creditor or other person authorized to file this claim (attach copy of power of attorney, if any)

July 21 2004            WILLIAM C. ELLIOTT, Attorney at Law

Penalty for presenting fraudulent claim. Fine of up to $500,000 or imprisonment for up to 5 years or both, 18 U.S.C. § 152 and 3571.
**Note:** SEND ALL DISBURSEMENTS TO CREDITOR.

FIVE STAR CREDIT UNION
P.O. Box 2028
Dothan, AL 36302-2028

## CLOSED END FIXED RATE NOTE, DISCLOSURE, and SECURITY AGREEMENT

**APPROVED**

Borrower: <u>Tommy Lee Henry , Jr.  and wife, Letita J. Henry</u>
Address: <u>788 Truitt Rd.   Gordon, Al 36343</u>
Loan Amount: <u>$38,922.91</u>          NOTE RATE: <u>8.00%</u>    Account/Loan Number: <u>422139578</u>

**DEC 2 6 2002**

By:

### RUTH IN LENDING DISCLOSURE STATEMENT

| ANNUAL PERCENTAGE RATE The cost of your credit as a yearly rate. | FINANCE CHARGE The dollar amount the credit will cost you. | Amount Financed The amount of credit provided to you or on your behalf. | Total of Payments The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 8.056% | $17,849.38 | $38,822.91 | $56,672.29 |

Your Payment Schedule will be:

| Number of Payments | Amount of Payments | When Payments Are Due |
|---|---|---|
| 119 | $472.64 | Monthly Payment to Begin : February 1, 2003 |
| 1 | $428.13 | Last Payment Being: January  1, 2013 |

THIS IS A FIXED RATE NOTE.

Property Insurance:  You may obtain property insurance from anyone you want that is acceptable to the Credit Union.

Security:  Collateral securing other loans (except loans secured by your primary residence or household goods) with us may also secure this loan.  You are giving a security interest in your Credit Union account(s), shares, certificates and the goods or property being purchased, or other  (describe)

Required Deposit:  The Annual Percentage Rate does not take into account any required deposit.

Filing Fees: $                    Assumption:  This loan cannot be assumed

Prepayment:  If you pay this loan off early, you will not have to pay a penalty.

Late Charge: 5% of the scheduled payment amount in default if late 10 days or more, with a minimum of 50 cent and maximum of $100.00

See your contact document for any additional information about nonpayment, default, any required repayment in full before the schedule date, and prepayment refunds and penalties. "e" means an estimate.

Itemization of the Amount Financed of <u>$38,922.91</u>

| $ | Amount given to you directly | Amount paid to others on your behalf |
|---|---|---|
| $38,723.91 | Amount paid on your accounts | |
| $199.00 | Prepaid Finance Charge | $ |
| | | $ |
| | | $ |

Description of Security Offered:

| | | |
|---|---|---|
| Mobile Home:  Year <u>1991</u>    Make  <u>Peach St</u> | Model Number <u>2614</u> | Serial Number <u>PSHGA1019A&B</u> |
| Vehicle Desc.:  Year <u>1999</u>   Make  <u>Chry</u> | Model Number <u>Cirrus LX</u> | Serial Number <u>1C3EJ56H9XN531356, 1998</u> |
| Ford Expedition 1FMRU1769WLC48441 & 1990 Chev C1500 1GCDK14K8LZ154002 | | |
| Other: also: See Exhibit "A" of Mtg. (land) | | |

Share or Share Certificate Pledged Amount:  $_____  in Account Number_____

1. **DEFINITIONS**:  Wherever used in this Closed End Note, Disclosure, Security Agreement, the words "you", "your" and "yours" mean each person who signs this Note; the words "Credit Union" mean Five Star Credit Union or anyone to whom is Note is assigned or transferred.

2. **BORROWER'S PROMISE TO PAY.**  For value received, you promised to pay to the order the Credit Union, its successors and assigns, the Loan Amount plus interest as set forth on the reverse side of this form.  You agree that the Credit Union may assign or transfer this Note to some other person or entity without your consent and without notice to you.

**ACKNOWLEDGEMENTS.** You acknowledge receipt of a copy of this Closed End Note, Disclosure, and Security Agreement and agree to all of the terms stated on the front and back of this form.  You agree that all of the terms apply to you jointly and severally.  If you are not a borrower, but an owner of collateral being offered as security, sign below and check the box "Owner of Collateral".  By doing so, you agree only to the terms of the security agreement.  If you are a guarantor, sign below and check the box "Guarantor".  By doing so, you agree only to the terms of the Guaranty Agreement.

**CAUTION – IT IS IMPORTANT THAT YOU THOROUGHLY READ THE CONTRACT BEFORE YOU SIGN IT.**

Borrower: Tommy Lee Henry Jr.          12-26-02
                                                Date          Co Borrower Letita J. Henry

payment schedule shown in the Truth in Lending Disclosure. ~~each~~ payment that you make will be applied first to interest, to any charges other than principle or interest, and the remainder to the reduction of the principal amount you owe. You will make your monthly payments at the main office. ~~he~~ Credit Union, as designated on the reverse side or of credit insurance premiums for the coverage(s) you elected above in accordance with the payment schedule shown. You agree that the Credit Union may assign or transfer this such other place as the Credit Union may designate. You promise to repay the money loaned to you, including any amounts advanced to you as a part of this loan for the payment Note to some other person or entity without your consent and without notice to you.

4. **LATE CHARGES**. If a payment is ever late 10 days or more, you will be charged 5.00% of the payment amount in default, with a minimum of $.50 and a maximum of $100.00.

5. **INTEREST**. A FIXED RATE NOTE.

6. **BORROWER'S RIGHT TO REPAY**. You may repay the principle amount you owe in whole or in part at any time without the imposition of any prepayment penalty. If you make a partial prepayment, it will not change the due date or amount of any monthly payment, unless the Credit Union agrees in writing to change.

7. **SECURITY AGREEMENT**. The payment of this Note shall be secured by all of your present and future Credit Union accounts, shares and certificates (excluding IRAs, SEPS, KEP, GHS, or any other accounts which, if pledged, would result in the loss of special tax treatment under the Internal Revenue Code) you now have or hereafter may have including all accounts you have a right to withdraw from or an ownership interest in and by the security shown in the Description of Security Offered section on the reverse side (the Collateral). In the event, real estate is also being given as security for this loan, a security interest in the real estate will be described in a mortgage of deed to secure debt given by the borrowers of even date herewith. Reference to such mortgage or deed to secure debt is hereby made for a more particular description of the terms and conditions of default and acceleration thereof upon which this Note is issued and secured. You are giving this interest to secure repayment of your loan as well as any other amounts you now owe or will owe the Credit Union, except that security interests in your principle place of dwelling or any household goods will only secure the Loan or advance for which those security interest were given. You authorize the Credit Union to take the funds, shares or certificates and apply it to your debt if you are in default. The Credit Union may, solely at Credit Union below the amount of your debt. There is a waiver of exemption as to property subject to a security interest executed in connection with this obligation, which its option, allow you to withdraw a portion of your shares without affecting its security interest. Withdrawals may not be allowed if it will reduce the amount of shares in the property is described above. You warrant unto the Credit Union that you possess sole and unconditional ownership of the Collateral and that there are no other perfected or unperfected security interest therein. You agree to deliver possession of the said personal property and/or certificated or documents of title to such property unto the Credit Union and to do all things necessary to perfect the Credit Union's security interest in the personal property. Real estate will be perfected by the filing of a Mortgage, or Deed to Secure debt on the property. This agreement is intended to also secure not only the original sum advance but also all subsequent advances made by the Credit Union for the purpose of paying any charges or expenses permitting by the Uniform Commercial Code (UCC) as enacted by the laws of the state in which the Collateral is located, and also taxes, liens, other security interest, and insurance premiums which it deems necessary to pay to protect its security interest in the property; all of said advances to be hereby secured and to be payable with like interest as herein provided for the original sum advanced; you agree to indemnify and save harmless the Credit Union for any loss, liability or damage it may suffer by reason of your furnishing third parties with incorrect statements of account, whether done in good faith or not; you agree to release the Credit Union from any liability for failure to send a Statement of Termination of Financing within the time required by the UCC; you agree that any objections which you are entitled to make under the UCC shall be binding upon the Credit Union only in writing and signed by you and delivered to the Credit Union; a written statement of any claim under the UCC signed by you shall be delivered to the Credit Union within 24 hours of the alleged violation and failure to do so shall be a bar to any claim there under; you agree to furnish the Credit Union with a complete and accurate list of names and addresses of all persons entitled to receive notice under the UCC within 24 hours and your failure to do so the Credit Union shall be entitled to assume that there are none or if an incorrect list be furnished, the Credit Union shall recover from you any loss or damage it may suffer in reliance thereon. You agree to immediately remove any personal property which is not a part of the Collateral from the Collateral upon default. You further agree to notify the Credit Union within 24 hours after repossession or foreclosure, if you claim that any property not covered by this security agreement was obtained with the Collateral upon repossession or foreclosure. You further agree that failure to give such notice by registered mail shall constitute a waiver of the right to assert any rights in connection with such property. This Note and Security Agreement is intended to secure also any renewals or extensions of the Note. It is understood and agreed by each party hereto that you signed this Note and Security Agreement without condition, reservations or representation as to any other person having signed the same, or that any other person or persons shall sign the same, as maker, guarantor, or endorser, and without any reservation or conditions as to delivery, execution or otherwise.

8. **OWNERSHIP OF COLLATERAL**. You promise that you will use the proceeds of this loan to purchase the Collateral or that no one else has any claim, right or interest in the Collateral. You agree not to sell, lease, pledge or give the Collateral to anyone else until you have repaid the debt to the Credit Union or the Credit Union gives you written permission.

9. **USE OF THE COLLATERAL**. You promise to protect and keep the Collateral in good repair, to defend the Collateral from any third party claims, to protect it from any forced levy or sale, to refrain from using it for any unlawful purpose, to refrain from altering or modifying the Collateral without the written permission of the Credit Union, to notify the Credit Union prior to moving or changing the location of the Collateral, and to assist the Credit Union to defend its rights in the Collateral.

10. **INSURANCE AND TAXES**. You must keep the Collateral fully insured against loss or damage said coverage listed the Credit Union as loss payee. You may obtain this insurance from anyone you want that is acceptable to the Credit Union. If you fail to obtain or maintain insurance, the Credit Union may purchase insurance coverage on your behalf. Such insurance may cover only the Credit Union's interest. Since you authorize the Credit Union to add the cost of the insurance to this loan and charge you a FINANCE CHARGE at the same rate as the original sum advanced. You also promise to pay any and all taxes due on the Collateral and to furnish the Credit Union with proof of said payment. If you fail to do so, the Credit Union may pay the taxes and add the amount to this loan and charge you a FINANCE CHARGE at the same rate as your loan. You agree that the Credit Union may increase your payments if it pays any insurance, taxes or other charges or demand payment of such advances in full.

11. **DEFAULT**. You will be in default if you violate any of the promises or conditions set out in this Closed End Note, Disclosure, and Security Agreement, or any other agreement or statement you have made to the Credit Union. A default will occur which the Credit Union reasonably believes endangers the Collateral or your ability to repay this loan. Default includes, but in not limited to, the following: * You fail to make any payment when it is due; * You break any promise, covenant, or agreement you have made to the Credit Union under this agreement or in connection with agreement or in connection with any other agreement you have with the Credit Union is not true; * You or any guarantor dies, become insolvent, files a petition for relief under any chapter of the Bankruptcy Code or for any reason is unable to pay their debts when due; * You, for whatever reason, discontinue , dissolve or otherwise leave your usual business activity or employment; * A judgment is entered against you or against any guarantor in any court; * A writ of attachment, a lien, a writ of garnishment or any similar legal process is issued against any of your property or that any guarantor; * Any loss, theft or damage to any Collateral given under this agreement should occur; * You fail to keep in force any insurance which is required under the terms of this agreement or any other agreement or any other agreement you have with the Credit Union now or in the future; * Any Collateral used to secure your payment of this agreement or any other agreement you have with the Credit Union now or in the future is moved to another county without the Credit Union's prior written consent; * You are in default under the provisions of any security agreement given to the Credit Union; or * Anything else happens which gives the Credit Union any reason to believe that your ability or willingness to pay the Credit Union is impaired or that any other loan account with the Credit Union is not adequately secured.

12. **ACCELERATION**. In the event of a default in the payment of any monthly payment due under this Note, or in case of a failure to perform any of the terms and covenants contained in the Security Agreement and/or mortgage or deed to secure debt, if any, or if there should be such a charge in the affairs (financial or otherwise) of any party liable under this Note, as in the opinion of the Credit Union would increase the risk or render the debt insecure, the whole of the debt evidence by this Note, or any balance remaining unpaid thereon, together with any and all accrued interest may, at the option of the Credit Union, without notice of such acceleration to any party to this Note, become at once due and payable.

13. **WAIVERS**. You and any other person who has obligations under this Note waive presentment, protest, notice of protest, notice of dishonor, demand and all legal diligence in enforcing the collection of this Note and hereby expressly agree that the Credit Union may release or postpone collection of the whole or any part of this Note, either principal and/or interest, or may extend or renew the whole or any part thereof. Any change in or modification of any of the terms of this Note must be in writing and signed by us.

14. **COLLECTION COSTS**. In the event of default, you agree to pay all costs of collecting the amount you owe under this agreement including, reasonable attorney's fees not in excess of 15% of the unpaid debt if the amount financed hereunder exceeds $300.00, and the debt is referred for collection to any attorney who is not our employee.

15. **GIVING OF NOTICES**. Subject to applicable law, any notice that must be given to you under this Note will be given by delivering or mailing it to you at the address stated on the reverse side or such notice to the address as you designated by notice to the Credit Union. Any notice that must be given to the Credit Union under this Note shall be given by mailing such notice to the address of the Credit Union as stated on the reverse side or to such other address as may have been designated by notice to you.

16. **GOVERNING LAW**. This Note shall be governed as to its validity, interpretation, or construction affect and in all other respects by the laws and decisions of the state in which the Collateral is located.

**GUARANTY AGREEMENT**: Each guarantor who has signed this agreement agrees that without notice to or consent from any of you, the Credit Union may extend any amount due or may fail to take any action concerning any security or against any party who may be liable (primarily or secondarily) under the Note or this Guaranty Agreement, all without affecting the liability of any guarantor. You agree that this obligation shall not be affected by any understanding that any person was or is to become bound (primarily or secondarily) under the Note or this Guaranty Agreement or by the death or bankruptcy of any party or by any action or inaction of the Credit Union. You agree in the event of default to pay all cost of collection, including a reasonable attorney's fee not in excess of 15% of the unpaid debt if the amount financed hereunder exceeds $300.00 and the debt is referred for collection to any attorney who is not our employee. As further security, you pledge and convey unto the Credit Union all of your Credit Union accounts, shares and certificates (excluding IRAs, SEPS, KEO, GHS or any other accounts which, if pledged, would result in the loss of special tax treatment under the Internal Revenue Code) you now have or hereafter may have including all accounts you have a right to withdraw from or any ownership interest in, and you authorize the Credit Union to apply any or all such paid shares and payments on shares to the payment of said indebtedness now owing or which may hereinafter accrue. You agree that any notice sent by the Credit Union to any of you shall constitute notice to any and all of you. You waive any and all notice required by the Uniform Commercial Code or applicable law. Any change in or modification of any of the terms of this Guaranty Agreement must be in writing

~~signed by us.~~

TLH    LJH



**FIVE STAR**
★ ★ ★ ★
**CREDIT UNION**

411 North Foster Street
Dothan, Alabama 36303

MTG 1537 75
Recorded In Above Book and Page
01/06/2003 09:41:16 AM
Luke Cooley
Judge of Probate
Houston County, Alabama

## MORTGAGE

STATE OF ALABAMA
COUNTY OF Houston
Mortgage/Address: FIVE STAR CREDIT UNION, 411 N. Foster Street, Dothan, AL 36303
Mortgagor : Tommy Lee Henry,Jr. and wife, Letita J. Henry
Date Mortgage Executed: **December 26,2002**
Principle Sum: **$38,922.91**                                   Maturity Date: **January 01,2013**
County where the property is situated: **Houston**
First Mortgage Recorded in _____, page _____.     First Mortgage Assigned in _____, page _____.

THIS MORTGAGE, made and entered into this day as stated above as "Date Mortgage Executed",
By and between the above stated "Mortgagor" (hereinafter referred to as "Mortgagor", whether one or more) and the above stated "Mortgagee".

WITNESSETH:

WHEREAS, said Mortgagor, is justly indebted to Mortgagee in the above stated " Principal Sum" together with any advances hereinafter provided, in the lawful money of the United States, which indebtedness is evidenced by a Promissory Note of even date herewith which bears interest as provided therein and which is payable in accordance with its terms, with the entire Debt, if not sooner paid, due and payable on the above stated "Maturity Date",

NOW THEREFORE, in consideration of the premises and of said indebt ness and in order to secure prompt payment of the same according to the terms and stipulations contained in said Promissory Note and any and all extensions and renewals thereof, or of any part thereof, and any other amounts that the Mortgagee or its successors or assigns may advance to the Mortgagor before the payment in full of said Mortgage indebtedness, and any additional interest that may become due on any such extensions, renewals and advances or any part thereof (the aggregate amount of such debt, including any extensions, renewals, advances and interest due thereon, is hereinafter collectively called "Debt") and compliance with all the stipulations herein contained, the Mortgagor does hereby grant, bargain, sell and convey unto the Mortgagee, the real estate described as follows:

### "SEE EXHIBIT A"

TO HAVE AND TO HOLD the real estate unto the Mortgagee, its successors and assigns forever, together with all the improvements now or hereafter erected on the real estate and all easements, rights, privileges, tenements, appurtenances, rents, royalties, mineral, oil and gas rights, water, water rights and water stock and all fixtures now or hereafter attached to the same real estate, all of which, including replacements and additions thereto shall be deemed to be and remain a part of the real estate covered by this Mortgage, and all of the foregoing are hereinafter referred to as "Real Estate" and shall be conveyed by this Mortgage.

The Mortgagor covenants with the Mortgagee that the Mortgagor is lawfully seized in fee simple of the Real Estate and has a good right to sell and convey the Real Estate as aforesaid; that the Real Estate is free of all encumbrances, except as stated herein, and the Mortgagor will warrant and forever defend the title to the Real Estate unto the Mortgagee against the lawful claims of all persons, except as otherwise herein provided.

The Mortgage is junior and subordinate to that certain Mortgage if stated above and if assigned as recorded as stated above in the County Probate Office where the land is situated (hereinafter called the "First Mortgage"). It is specifically agreed that in the event default should be made in the payment of principal, interest or any other sums payable under the terms and provisions of the First Mortgage, the Mortgagee shall have the right without notice to anyone, but shall not be obligated, to pay part or all of whatever amounts may be due under the terms of the First Mortgage, and any and all payments so made shall be added to the debt secured by this Mortgage and the Debt (including all such payments) shall be immediately due and payable, at the option of the Mortgagee, and this Mortgage shall be subject to foreclosure in all respects as provided by law and by the provisions hereof.

The Mortgagor hereby authorizes the holder of any prior mortgage encumbering the Real Estate to disclose to the Mortgagee the following information: (1) the amount of indebtedness secured by such mortgage; (2) the amount of such indebtedness that is unpaid; (3) whether any amount owned on such indebtedness is or has been in arrears; (4) whether there is or has been any default with respect to such mortgage or the indebtedness secured hereby; and (5) any other information regarding such mortgage or the indebtedness secured thereby which the Mortgagee may request from time to time.

For the purpose of securing the payment of the Debt, the Mortgagor agrees to: (1) pay promptly when due all taxes, assessments, charges, fines and other liens which may attain priority over this Mortgage (hereinafter jointly called "Liens"), when imposed legally upon the Real Estate and if default is made in the payment of the Liens, or any part thereof, the Mortgagee, at its option, may pay the same; (2) keep the Real Estate continuously insured, in such manner and by such companies as may be satisfactory to the Mortgagee; against loss by fire, vandalism, malicious mischief and other perils usually covered by a fire insurance policy with standard extended coverage endorsements, with loss, if any, payable to the Mortgagee, as its interest may appear; such insurance to be in an amount sufficient to cover the Debt. The original insurance policy, and all replacements therefore, shall be delivered to and held by the Mortgagee until the Debt is paid in full. The original insurance policy, and all replacements therefore, shall be delivered to and held by the Mortgagee until the Debt is paid in full. The original insurance policy and all replacements therefore must provide that they may not be cancelled without the insurer giving at least ten days prior written notice of such cancellation to the Mortgagee. The Mortgagor hereby assigns and pledges to the Mortgagee, as further security for the payment of the Debt, each and every policy of hazard insurance now and hereafter in effect which insures said improvements, or any part thereof, together with all the right, title and interest of the Mortgagor in and to each and every such policy, including but not limited to all the Mortgagor's right, title and interest of the Mortgagor in and to each such policy, including but not limited to all the Mortgagor's right, title and interest in and to any premiums paid on such hazard insurance, including all rights to return premiums. If the Mortgagor fails to keep the Real Estate insured as specified above then, at the election of the Mortgagee and without notice to any person, the Mortgagee may declare the entire Debt due and payable and this Mortgage subject to foreclosure, and this Mortgage may be foreclosed as hereinafter provided; and, regardless of whether the Mortgagee declares the entire Debt due and payable, the Mortgagor may, but shall not be obligated to, insure the Real Estate for its full insurable value (or for such lesser amount as the Mortgagee may wish) against such risks of loss, for its own benefit the proceeds from such insurance (less cost of collecting same), if collected, to be credited against the Debt, or, at the election of the Mortgagee, such proceeds may be used in repairing or reconstruction the improvements location on the Real Estate. All amounts spent by the Mortgagee for insurance or for the payment of Liens shall become a debt due by the Mortgagor to the Mortgagee and at once payable without demand upon or notice to the Mortgagor, and shall be secured by the lien of this Mortgage, and shall bear interest from the date of payment by the Mortgagee until paid at the rate of interest provided for in the Promissory Note. The Mortgagor agrees to pay promptly when due the principle and interest of the Debt and keep and perform every other covenant and agreement of the Promissory Note secured hereby.

As further security for the payment of the Debt, the Mortgagor hereby assigns and pledges to the Mortgagee, the following described property rights, claims, rents, profits, issues and revenues: (1) All rents, profits, issues, and revenues of the Real Estate from time to time accruing, whether under leases or tenancies now existing or hereafter created, reserving to the Mortgagor, so long as the Mortgagor is not in default, hereunder, the right to receive and retain such rents, profits, issues and revenues. (2) All judgments, awards of damages and settlements hereafter made resulting from condemnation proceedings or the taking of the Real Estate, or any part thereof, under the power of eminent domain, or for any damage (whether caused by such taking or otherwise) to the Real Estate, or any part thereof, or any rights appurtenant thereto, including any award for change of grade of streets, and all payments made for the voluntary sale of the Real Estate, or any part thereof, in lieu of the exercise of the power of eminent domain shall be paid to the Mortgagee. The Mortgagee is hereby authorized on behalf of and in the name of the Mortgagor to execute and deliver valid quittances for, or appeal from any such judgments or awards. The

TLH          LJH

Mortgagee may apply such sums received, or any part thereof, after the payment of all the Mortgagee's expenses incurred in connection with any proceeding or transaction described in this subparagraph 2, including court cost and attorney's fees, on the Debt in such manner as the Mortgagee elects, or, at the Mortgagee's option, the entire amount or any part thereof so received may be released or may be used to rebuild, repair or restore any or all of the improvements located on the Real Estate.

The Mortgagor hereby incorporates by reference into this Mortgage all of the provisions of the Promissory Note of even date herewith. Mortgagor agrees that, in the event that any provision or clause of this Mortgage or the Promissory Note conflicts with applicable law, such conflict shall not affect any other provision or clause of this Mortgage or the Promissory Note which conflicts with applicable law, such conflict shall not affect any other provisions of this Mortgage or the Promissory Note which can be given effect. It is agreed that the provisions of the Mortgage and the Promissory Note are sever able and that, if one or more of the provisions contained in this Mortgage or in a Promissory Note other provision hereof, this Mortgage shall be construed as is such invalid, illegal, or unenforceable provision has never been contained herein. If enactment or expiration of applicable laws has the effect of rending any provision of the Promissory Note or this Mortgage unenforceable according to its terms, and may invoke any remedies permitted hereunder.

The mortgagor agrees to keep the Real Estate and all improvements located thereon in good repair and further agrees not to commit waste or permit impairment or deterioration of the Real Estate, and at all times to maintain such improvements in as good condition as they are, reasonable wear and tear excepted.

If all or any part of the Real Estate or any interest therein is sold or transferred by Mortgagor without Mortgagee's prior written consent, excluding (a) the creation of a lien or encumbrance subordinate to this Mortgage, (b) the creation of a purchase money security interest for household appliances, (c) the transfer by devise descent or by operation of law upon the death of a joint tenant or (d) the grant of any leasehold interest of three years or less not containing an option to purchase. Mortgagee may, at Mortgagee's option, declare all of the sums secured by this Mortgage to be immediately due and payable. Mortgagee shall have waived such option to accelerate if, prior to the sale or transfer, Mortgagee and the person to whom the Real Estate is to be sold or transferred reach agreement in writing that the credit of such person is satisfactory to Mortgagee and that the interest payable on the sums secured by this Mortgage shall be at such rate as Mortgagee shall request.

The Mortgagor agrees that no delay or failure of the Mortgagee to exercise any option to declare the Debt due and payable shall be deemed a waiver of the Mortgagee's right to exercise such option, either as to any past or present default, and it is agreed that no terms or conditions contained in this Mortgage shall be waived, altered or changed except by a written instrument signed by the Mortgagor and signed on behalf of the Mortgagee by one of its duly authorized representatives.

After default on the part of the Mortgagor, the Mortgagee, upon bill filed or other proper legal proceedings being commenced for the foreclosure of this Mortgage, shall be entitled to the appointment by any competent court, without notice to any party, of a receiver for the rents issues and profits of the Real Estate, with power to lease and control the Real Estate, and with such other powers as may be deemed necessary.

Upon request of Mortgagor (separately or severally, if more than one), Mortgagee, at Mortgagee's option prior to release of this Mortgage, may make future advances to Mortgagor (separately or severally, if more than one). Such future advances, with interest thereon, shall be secured by this Mortgage when evidenced by promissory notes stating that said notes are received hereby.

UPON CONDITION, HOWEVER, that if the Mortgagor pays the Debt (which debt includes the indebtedness evidenced by the Promissory Note hereinabove referred to and any or all extensions and renewals thereof and advances and any interest due on such extensions, renewals and advances) and all other indebtedness secured hereby and reimburses the Mortgagee for any amounts the Mortgagee has paid in payment of Liens But if: (1) any warranty or representation made in this Mortgage is breached or proves false in any material respect; (2) default is made in the due performance of any covenant or agreement of the Mortgagor under this Mortgage; (3) default is made in payment to the Mortgagee of any sum paid by the Mortgagee under the authority of any provision of this Mortgage; (4) the Debt, or any part thereof, remains unpaid at maturity; (5) the interest of the Mortgagee in the Real Estate become endangered by reason of the enforcement of any prior lien or encumbrance; (6) any statement of lien is filed against the Real Estate, on which such statement is based; (7) any law is passed imposing or authorizing the imposition of any specific tax upon this mortgage or the Debt or permitting or authorizing the deduction of any such tax from the principle or interest of the Debt, or by virtue of which any tax lien or assessment upon the Real Estate shall be chargeable against the owner of this Mortgage; (8) any of the stipulations contained in this Mortgage is declared invalid or inoperative by any court of competent jurisdiction; (9) Mortgagor or any of them (a) shall apply for or consent to the appointment of a receiver, trustee or liquidator thereof of the Real Estate or of all or a substantial part of such Mortgagor's assets, (b) be adjudicated a bankrupt or insolvent or file a voluntary petition in bankruptcy, (c) fail, or admit in writing such Mortgagor's inability, generally to pay such Mortgagor's debts as they come due, (d) make a general assignment for the benefit of creditors, (e) file a petition or an answer seeking reorganization or an arrangement with creditors or taking advantage of any insolvency law, (f) file an answer admitting the material allegations of, or consent to, or default in answering a petition filed against such Mortgagor in any bankruptcy reorganization, or insolvency proceedings; or (g) an order for relief or other judgment or decree shall be entered by any court of competent jurisdiction approving a petition seeking liquidation or reorganization of the Mortgagor, or any of them, if more than one, or appointing a receiver, trustee or liquidator of any Mortgagor, or of the Real Estate or of all or a substantial part of the assets of any Mortgagor; then, upon the happening of any one or more of said events, at the option of the Mortgagee, the unpaid balance of the Debt shall at once become due and payable and this Mortgage shall be subject to foreclosure and may be foreclosed as now provided by law in case of past-due mortgages; and the Mortgagee shall be authorized to take possession of the Real Estate and, after giving notice of the time, place and terms of sale by publication once a week for three consecutive weeks in some newspaper published in the county in which the Real Estate is located to sell the Real Estate in front of the courthouse door of said county or public outcry, to the highest bidder for cash and to apply the proceeds of said sales as follows: firs, to the expense of advertising, selling and conveying the Real Estate and foreclosing this mortgage, including a reasonable attorney's fee; second, to the payment of any amounts that have been spent, or that it may then be necessary to spend, in paying insurance premiums, liens or other encumbrances, with interest thereon; third, to the payment in full of the balance of the Debt and interest thereon, whether the same shall or shall not have fully matured at the date of said sale, but no interest shall be collected beyond the day of sale and any unearned interest shall be credited to the Mortgagor; and fourth, the balance, if any, to be paid to the party or parties appearing of record as the owner of the Real Estate at the time of sale, after deducting the cost of ascertaining who is such owner. The Mortgagee agrees that the Mortgagee may bid at any sale has under the terms of this Mortgage and may purchase the Real Estate if the highest bidder thereof. At the foreclosure sale the Real Estate may be offered for sale and sold as a whole without first offering it in any other manner or may be offered for sale and sold in any other manner the Mortgagee may elect. The Mortgagee agrees to pay all costs, including reasonable attorney's fees, incurred by the Mortgagee in collecting or securing or attempting to collect or secure the Debt or any part thereof, or in defending or attempting to defend the priority of this Mortgage against any lien or encumbrance on the Real Estate, unless this Mortgage is herein expressly made subject to any such lien or encumbrance; and/or all cost incurred in the foreclosure of this Mortgage, either under the power of sale contained herein, or by virtue of the decree of any court of competent jurisdiction. The full amount of such costs incurred by the Mortgagee shall be a part of the Debt and shall be secured by this Mortgage. The purchaser at any such sales shall be under no obligation to see to the proper application of the purchase money. In the event of a sale hereunder, the Mortgagee, or the owner of the Debt and Mortgage, or auctioneer, shall execute to the purchaser for and in the name of the Mortgagor a deed to the Real Estate.

Mortgagor waives all rights of homestead exemption in the Real Estate and relinquishes all rights of curtesy and dower in the Real Estate.

Plural or singular words used herein to designate the undersigned shall be construed to refer to the maker or makers of this Mortgage, whether one or more natural persons. All covenants and agreements herein made by the undersigned shall bind the heirs, personal representatives, successors and assigns of the undersigned, and every option, right and privilege herein reserved or secured to the Mortgagee, shall inure to the benefit of the Mortgagee's successor and assigns.

Mortgagor agrees that all of the provisions printed above are agreed to and accepted by Mortgagor and constitute valid and enforceable provision of this Mortgage. IN WITNESS WHEREOF, the undersigned Mortgagor has executed this instrument on the date first written above.

_____ (SEAL)
Tommy Lee Henry, Jr.

_____ (SEAL)
Letita J. Henry

STATE OF ALABAMA
COUNTY Of Houston

I, the undersigned authority, a Notary Public, in and for said County in said State, hereby certify that Tommy Lee Henry, Jr. and Letiea J. Henry (s) is (are) signed to the foregoing conveyance, and who is (are) known to me, acknowledge before me on this day that, being informed of the contents of said conveyance they executed the same voluntarily on the day the same bears date. Given under my hand and official seal this 26th day of December, 2002.

MY COMMISSION EXPIRES: May 19, 2004
BONDED THRU NOTARY PUBLIC UNDERWRITERS

My commission expires: _____                    _____
                                                              Notary Public

NOTE: TO CLERK OF COURT: Mortgagee certifies that if at any point this Mortgage is assigned to a non-tax exempt holder that such Holder will comply with Alabama Code 40-22-2(5)(1975).

MTG   1537   77

# "EXHIBIT A"

Property of: **TOMMY LEE HENRY, JR. and wife, LETITA J. HENRY**
788 Truitt Rd., Gordon, AL 36343

Lots 1, 2 & 3, Block "A", Peaceful Acres Subdivision, a subdivision situated in Houston County, Alabama, as per map or plat of same recorded in the office of the Judge of Probate of Houston County, Alabama in Plat Book 5, Page 48.  Together with all improvements and also,

1-1991 Peach State Double Wide-28x52-Model 2614,
     serial #PSHGA10191A and PSHGA10191B
1-1999 Chry. Cirrus LX 4 dr., Serial #1C3EJ56H9XN531356
1-1998 Ford Expedition, Serial #1FMRU1769WLC48441
1-1990 Chev. C1500 4WD, Serial #1GCDK14K8LZ154002

Tommy Lee Henry, Jr.                    Letita J. Henry

```
No Tax Collected      1.00
Recording Fee        17.00
TOTAL                18.00
```